**Robert J. SWEENEY, Plaintiff,**

**v.**

**John W. GARDNER, Secretary of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 67–135–G.**

United States District Court
D. Massachusetts.

Dec. 29, 1967.

---

Thomas L. Sullivan, Boston, Mass., for plaintiff.

Paul F. Markham, U. S. Atty., Thomas P. O'Connor, Asst. U. S. Atty., for defendant.

## MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GARRITY, District Judge.

This is an action brought under § 205(g) of the Social Security Act, as

624

amended, 42 U.S.C. § 405(g), for review of a "final decision" of the Secretary of Health, Education and Welfare. In accordance with the statute, the Secretary has filed as part of his answer a certified copy of the transcript of the record including the evidence upon which the findings and decision are based. Defendant has moved for summary judgment and both parties have filed briefs on defendant's motion.

On January 14, 1965, plaintiff filed an application for establishment of a period of disability under § 216(i) of the Act, 42 U.S.C. § 416(i), and for entitlement to disability insurance benefits under § 223 of the Act, 42 U.S.C. § 423, alleging the onset of a disability within the meaning of the statute on January 18, 1963, the date of plaintiff's injury. The Social Security Administration denied this application on June 27, 1965 and, upon plaintiff's request for reconsideration, affirmed its denial on May 4, 1966. Plaintiff thereupon requested a hearing before a hearing examiner and a hearing was held on September 26, 1966, at which plaintiff was represented by counsel. At the hearing plaintiff offered his own testimony and the testimony of Dr. Kittridge Anderson, a specialist in neurology. The hearing examiner on his own initiative also took the testimony of Mr. George J. Whalley, a vocational expert. Upon the record so constituted, together with documentary evidence relative to plaintiff's application, the hearing examiner rendered a decision on October 31, 1966, that plaintiff was not disabled within the meaning of the Act as it read prior to its amendment on July 30, 1965, but that the plaintiff was disabled within the meaning of the Act as amended and that his disability had commenced on January 18, 1963 and would continue until December 31, 1966. Plaintiff thereupon made request to the Appeals Council of the Social Security Administration for review of the hearing examiner's decision. The Appeals Council, having decided on its own motion to review the hearing examiner's decision, considered the entire record *de novo*,

together with such information as was contained in plaintiff's request for review, and on December 12, 1966 rendered a decision holding that plaintiff's "disability", within the meaning of the Act as amended in 1965, commenced on January 18, 1963 and was continuing through the date of the Appeals Council's decision. The hearing examiner's decision was so modified but otherwise affirmed. The decision of the Appeals Council was the "final decision" of the Secretary, subject to review under § 205(g) of the Act.

The prescribed standard of this court's review is set out in § 205(g), which provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole". Celebrezze v. Bolas, 8 Cir., 1963, 316 F.2d 498, 501; Thomas v. Celebrezze, 4 Cir., 1964, 331 F.2d 541, 543. It "has been consistently defined as more than a scintilla, but less than a preponderance." Whittier v. Gardner, D.Me., 1967, 263 F.Supp. 670, 672. The function of the reviewing court under § 205(g) is to determine "whether the administrative findings are adequate in law and premised upon substantial record evidence. Issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary." Rodriguez v. Celebrezze, 1 Cir., 1965, 349 F.2d 494, 495–496.

The general issue for determination here is whether there is substantial evidence in the record to support the ultimate finding of the Secretary that plaintiff failed to establish that he was disabled within the meaning of the Act as it read prior to the 1965 amendments. Before July 30, 1965, the term "disability" was defined both in § 216(i) (1) and § 223(c) (2) of the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impair-

ment which can be expected to result in death or be of long-continued and indefinite duration." This definition of disability differs from the present definition only with respect to the required expected duration of the impairment; the present definition requires that the impairment "be expected to result in death *or has lasted or can be expected to last for a continuous period of not less than 12 months.*" (Emphasis added.) 42 U.S.C. §§ 416(i) (1) and 423(c) (2). In view of the fact that the Secretary (through the hearing examiner) specifically found that plaintiff's impairments "prevent him from engaging in substantial gainful activity from January 18, 1963, through December 31, 1966", the court does not consider the questions as to whether plaintiff's injury resulted in a medically determinable physical or mental impairment or whether plaintiff's impairment rendered him unable to engage in any substantial gainful activity. These questions were answered affirmatively by the trial examiner and are not contested. The narrow issue is as to the expected duration of the plaintiff's impairment or, more specifically, whether there is substantial evidence in the record to support the finding of the Secretary that plaintiff's impairments "were not of long-continued and indefinite duration." Because of the narrowness of the issue, it is unnecessary to set out plaintiff's full life and employment history and his odyssey from doctor to doctor except as these relate to the expected duration of his impairment.

The record discloses that plaintiff was born on July 4, 1926; that he has completed 9 years of formal education; and that he became disabled on January 18, 1963, at the age of 36, as the result of a neck injury. On the morning of that day plaintiff, in the course of his employment with Brinks, Inc., as a driver, slipped on a wet running board as he alighted from the cab of an armored truck. The neck injury which he thereby sustained initiated a series of visits by him to no less than 13 physicians from whom he received various diagnoses and treatments. It is fair to state, in summary, that none of these treatments afforded him any significant or lasting relief until May 27, 1966, when Dr. George F. Miller performed a scalenectomy on the left scalene anticus muscle. This operation involved cutting the scalene anticus muscle, a neck muscle, in order to relieve pressure on certain nerve roots in the area of the neck. According to both the plaintiff and Dr. Miller this operation had succeeded, as of the time of the hearing before the hearing examiner, in giving plaintiff significant functional relief and at that time it was anticipated that two days thereafter plaintiff would undergo a right scalenectomy as a result of which it was further anticipated that plaintiff would experience additional relief.

Dr. Anderson testified that there was improvement in plaintiff's condition after the first operation. Specifically, he stated that there was "improvement in the degree of movement of the neck and there was lessening of the spasm that [plaintiff] had had in the left trapezius muscle." The doctor added, however, that, in addition to the symptoms which he attributed to the "scalene syndrome" (i. e., the symptoms indicating pressure of the scalene anticus muscle on the nerve roots in the neck) and which were alleviated by the scalenectomy, plaintiff had other symptoms, specifically, generalized spasms in other muscle groups. Dr. Miller also expressed the opinion after the first operation, in a report to Dr. Anderson, that although the symptoms of the scalene syndrome were much improved, plaintiff "still of course has the other symptoms which as you have suggested may be due to some nerve root compression." Dr. Anderson in his testimony also expressed the opinion that, although the "recovery period" for the second operation would probably be about three months, plaintiff would be unable even after this period to perform clerical work or any work involving shuffling of papers for an eight-hour day without experiencing increased pain. Even if plaintiff had to work only a six-hour day, Dr. Anderson

testified that he believed that plaintiff would be able to work at most only two hours without requiring some period of recuperation, which he did not describe.

Before the hearing examiner, plaintiff testified that up until the first operation "three, four, five times a day I'd have to spend twenty minutes to half an hour in traction." He added that he hasn't used the traction since the first operation because "they advised me not to anyway because my incision is right here and I'd be stretching it up and I haven't used it." On November 15, 1966, in his request to the Appeals Council for review of the hearing examiner's decision, the plaintiff alleged that the second operation had been performed as scheduled and that he had not obtained the anticipated improvement in his condition. The plaintiff did not in any other way supplement the record before the hearing examiner.

Mr. Whalley, the vocational expert, testified that, assuming the plaintiff had a 90% limitation in the movement of his neck and was unable to raise his arms above his head but required no traction during the working day, the plaintiff would, in his opinion, be able to engage in jobs such as those of an office or information clerk, telephone sales or service clerk, nontechnical proofreader, truck or taxi dispatcher, and cafeteria cashier. He added that plaintiff would require from two weeks to one month of training for such jobs and that these jobs were available within the local economy. Mr. Whalley further testified that, with the anticipated improvement of the plaintiff's condition from his pending operation, the range of jobs within the plaintiff's capacity would greatly increase. When asked what jobs would be available to plaintiff on a six-hour basis, Mr. Whalley replied that only the "answering service type, the collection department type, cashier type, the elevator operator" would be so available.

 On the basis of the entire record, the court is of the view that the defendant's motion for summary judg-

ment should be denied and that the Secretary's conclusion that plaintiff is not under a disability as defined in §§ 216(i) and 223 of the Act prior to the 1965 amendments should be reversed and the case remanded to the Secretary for the taking of additional evidence because of the failure of the Secretary to make certain findings which are crucial to the question of plaintiff's disability. The court is aware that plaintiff has not moved for summary judgment in this case. However, it has been well decided that, since the review proceeding under § 205(g) is peculiarly disposed to summary judgment treatment, a party's failure to move for summary judgment in such a proceeding does not preclude the entry of judgment in favor of such party. Moke v. Celebrezze, N.D. Calif., 1964, 236 F.Supp. 174, 177; Brill v. Celebrezze, E.D. N.Y., 1964, 232 F.Supp. 296, 310. So also plaintiff's failure to move for summary judgment does not preclude this court from remanding this matter for further hearings.

The hearing examiner's evaluation of the evidence indicates that he believed that plaintiff would be capable of performing the jobs which Mr. Whalley testified would be available to one who had a 90% limitation in the movement of his neck and was unable to raise his arms above his head but required no traction during the working day. Indeed, the hearing examiner referred in his evaluation of the evidence to "the success achieved from the first scalenectomy, which negated the requirement of traction in order to keep claimant comfortable." Yet plaintiff testified that he stopped using traction because of the effect which the doctors feared it would have on the incision from his first operation. There is no indication in the record that the traction was stopped for any other reason and there is at least an unrebutted inference that plaintiff would have to renew the use of traction once his incision had healed. If plaintiff did have to renew this treatment, Mr. Whalley's testimony is quite clear that

the employment opportunities open to plaintiff would be drastically narrowed.

Furthermore, the hearing examiner expressed great faith in the relief which plaintiff had derived from the first operation and concluded that "regardless of the degree of success of the second scalenectomy, the success achieved from the first scalenectomy \* \* \* was sufficient to enable [plaintiff] to engage in substantial gainful activity." Yet Dr. Anderson testified, and Dr. Miller wrote in a report to Dr. Anderson, that the first operation relieved only one of several symptoms which plaintiff had. Dr. Anderson also testified that he believed that even three months after the second operation plaintiff would experience pain if he undertook an eight-hour job requiring the "shuffling of papers", or even a similar six-hour job, unless plaintiff were afforded a period of recuperation every two hours. This latter testimony is unrebutted yet is unmentioned in the hearing examiner's decision. Dr. Anderson's testimony cannot be disregarded merely because he conceded that, since he was not a vocational expert, he was not completely familiar with the duties of a clerical worker. The hearing examiner asked Dr. Anderson a specific question about plaintiff's ability after the second operation to "shuffle" papers and "physically sit and move his arms." In answering this question, no vocational expertise was required. Nor can Dr. Anderson's testimony be disregarded on the basis of any medical report, admitted as an exhibit at the hearing, which indicates the examining physician's belief that plaintiff was malingering. The hearing examiner implicitly discounted any such report in finding a period of disability as defined after the 1965 amendments.

■ The extent of the pain which plaintiff would suffer after the second operation if he undertook any of the several jobs that would be otherwise available to him is a crucial question as to which further evidence is needed. See Frith v. Celebrezze, 5 Cir., 1964, 333 F.2d 557, 561. It is clear that pain, if substantial, can be disabling as long as it results from a medically determinable impairment. Page v. Celebrezze, 5 Cir., 1963, 311 F.2d 757.

■ The court's decision to remand is also based upon two documents attached to plaintiff's memorandum to support dismissal of defendant's motion for summary judgment. These are letters from Dr. Anderson to plaintiff's attorney in which the doctor indicates his belief that the surgery (presumably, the two scalenectomies) were of "short beneficial duration" and that plaintiff was still disabled. Although the court is limited to the record in determining whether the findings of the Secretary are supported by substantial evidence, extraneous matters may be considered in determining whether to remand "on good cause shown." McDaniel v. Flemming, D. Md., 1961, 190 F.Supp. 270. It has been said that in determining whether good cause has been shown under § 205, "courts must not require such a technical and cogent showing of good cause as would justify the vacation of a judgment or the granting of a new trial, where no party will be prejudiced by the acceptance of additional evidence and the evidence offered bears directly and substantially on the matter in dispute." Blanscet v. Ribicoff, W.D. Ark., 1962, 201 F.Supp. 257, 265, quoted in Sage v. Celebrezze, W.D.Va., 1965, 246 F.Supp. 285, 288. The condition of plaintiff subsequent to the second scalenectomy clearly is a matter which has a substantial bearing on the question of the expected duration of his impairment. At the further hearing, opportunity will be afforded to plaintiff to prove, and the hearing examiner to consider, the plaintiff's condition now that the second operation has been performed.

Defendant's motion for summary judgment is denied and, pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), this case is remanded to the Secretary so that he may reopen the record of the September 26, 1966 hearing in order to make such further findings as are suggested herein or may otherwise become necessary.