Frank SANTAGATE, Plaintiff,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 66–652.

United States District Court
D. Massachusetts.

Sept. 30, 1968.

James P. Brennan, Boston, Mass., for plaintiff.

Paul F. Markham, U. S. Atty., Thomas P. O'Connor, Asst. U. S. Atty., Dept. of Justice, Boston, Mass., for defendant.

## MEMORANDUM

MURRAY, District Judge.

This is an action brought under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g) (Supp. III 1967), for review of a "final decision" of the Secretary of Health, Education and Welfare (the "Secretary"). In accordance with the statute, the Secretary has filed as part of his answer a certified copy of the transcript (TR) of the record including the evidence upon which the findings and decision are based. Defendant has moved for summary judgment. and both parties argued the motion before this court.

On June 30, 1965, plaintiff filed an application for establishment of a period of disability under § 216(i) of the Act, 42 U.S.C. § 416(i) (Supp. III 1967), and for entitlement to disability insurance benefits under § 223 of the Act, 42 U.S.C. § 423 (Supp. III 1967). Plaintiff, a construction laborer, alleged that he was disabled within the meaning of the Act on February 19, 1965, the date he sustained injuries while at work. The

Social Security Administration denied this application on August 2, 1965 and, upon plaintiff's request for reconsideration, affirmed its denial on October 20, 1965. Plaintiff then requested a hearing before a hearing examiner and one was held on February 24, 1966, at which plaintiff was represented by counsel. At the hearing plaintiff offered his own testimony and the hearing examiner, on his own initiative, took the testimony of David W. Wilson, M.D., an "impartial medical advisor", and Ernest B. Walston, Ed. D., an "impartial vocational witness". In addition, the record contains medical reports prepared by six doctors who had examined or treated plaintiff and other documentary evidence concerning plaintiff's application.

On April 26, 1966 the hearing examiner issued a written opinion holding that plaintiff was not disabled within the meaning of the Act as it read both prior to and after the 1965 Amendments to the Act.[1] The Social Security Administration's Appeals Council refused to review the decision of the hearing examiner, and thus the hearing exam-

---

1. The 1965 Amendments to the Social Security Act changed the definition of the term "disability". Prior to the 1965 Amendments, "disability" was defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration * * *." Social Security Act, §§ 216(i) (1) (A), 223(c) (2), 42 U.S.C. §§ 416(i) (1) (A), 423 (c) (2) (1964). The 1965 Amendments, enacted on July 30, preserved the above language except to reduce the minimum period of disability to twelve months. Thus "disability" is now defined as the "inability to engage in any substantial gainful activity by. reason of * * * [an] impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months * * *." Social Security Act, §§ 216(i) (1) (A), 223(c) (2) (A), 42 U.S.C. §§ 416(i) (1) (A), 423(c) (2) (A) (Supp. III 1967) (minor difference in phrasing not shown). Section 303(f) (1) (B) (i) of Public Law No. 89-97, 79 Stat. 368 (1965) provides that the above amendments "shall be ef-

fective with respect to applications for disability insurance benefits * * * and for disability determinations * * * filed * * * before the month in which this Act is enacted, if * * * notice of the final decision of the Secretary of Health, Education, and Welfare has not been given to the applicant before such month * * *." As noted in the text below, the Secretary's decision became final on April 26, 1966, and thus it would appear that the more liberal 1965 definitions of "disability" are applicable to this case. Moreover, the court perceives no advantage to claimant stemming from a decision favorable to him based on the pre-1965 definitions. Although § 303(f) (1) of Public Law No. 89-97, supra, provides that no benefits may be paid until September 1965 under the 1965 Amendments, plaintiff would not exhaust the six-month waiting period required under both the old and new law until September 1965. See Social Security Act, § 223(a) (1), 42 U.S.C. § 423(a) (1) (Supp. III 1967). Despite these conclusions, the court will decide this case under both the old and new definitions of disability, as the case was heard on that basis by the Social Security Administration.

iner's decision became the "final decision" of the Secretary subject to review here.

The facts concerning plaintiff's injury and background, as found by the hearing examiner (TR p. 5), may be briefly summarized. At the time of his injury, plaintiff was 33 years old. He was living with his wife and three young children. After leaving school in the eighth grade, plaintiff has been employed for the most part as a general laborer in the construction industry. On February 19, 1965, the alleged onset of disability date, plaintiff was working as a "burner", a job involving the use of an acetylene torch in dismantling the steel framework of a building. While on the job, plaintiff was pushed by a swinging steel beam from the top of a truck upon which he was standing. As a result of his fall, plaintiff suffered multiple fractures of the left tibia and a narrowing of the vertebrae. Plaintiff also suffered pain in the lower back and in the right hip and leg. As of the date of the hearing, February 24, 1966, plaintiff remained unemployed and generally inactive. Plaintiff had received physical therapy and performed exercises directed by a physician. Plaintiff testified that he would work if he were able to do so, and, just prior to the hearing date, the Massachusetts Rehabilitation Commission recommended him for a 60-week training course in mechanical drafting. There is evidence that plaintiff was undergoing therapeutic rehabilitation at least until the time of the hearing examiner's decision. (TR pp. 37–38).

The hearing examiner found that plaintiff's back and leg injuries precluded him from engaging in "any substantial gainful activity" through December 31, 1965, and that as of January 1, 1966 plaintiff was able to perform light or sedentary work which qualifies as "substantial gainful activity" within the meaning of the Act. Since the 1965 Amendments to the Act require that a claimant's inability to work persist for twelve months or more, and since plaintiff's inability to work, as the hearing examiner found, lasted only ten months and ten days, the hearing examiner held that plaintiff did not meet the statutory definition of disability. Thus plaintiff was denied disability benefits and was not entitled to have his insured status under the Act "frozen" as of the time of his injury.

On review of the hearing examiner's decision, this court has "power to enter * * * a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing". Social Security Act, § 205(g), 42 U.S.C. § 405(g) (1964). The Secretary's findings of fact, "if supported by substantial evidence", are "conclusive". Id. Substantial evidence can be described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole". E. g., Sweeney v. Gardner, 277 F.Supp. 622, 624 (D.Mass.1967). Findings on credibility and the drawing of permissible inferences from evidentiary facts are functions within the province of the hearing examiner. E. g., Rodriguez v. Celebrezze, 349 F.2d 494, 495–496 (1st Cir. 1965).

The court must also examine the record to determine whether the hearing examiner correctly applied the law to the facts of this case. In particular, the court must determine whether material evidence has been elicited and findings made on each element of plaintiff's claim for disability benefits and the establishment of a disability period. See, e. g., Pollard v. Gardner, 267 F.Supp. 890, 903 (W.D.Mo.1967) (careful, exhaustive description of court's scope of review). If the hearing examiner may have applied the law incorrectly, failing to make necessary findings, district courts have remanded the case to the Secretary when the possibility exists that new findings will result in a denial of disability benefits. E. g., Egan v. Gardner, 277 F. Supp. 929 (N.D.Cal.1968); Sweeney v. Gardner, 277 F.Supp. 622 (D.Mass.1967).

There are two questions of law presented for decision by the instant case. They arise out of the hearing examiner's decision that plaintiff was totally disabled through December 31, 1965, but was not disabled for the last month and 18 days of the minimum disability period although he was undergoing rehabilitative treatment at the time. They have their genesis in the 1965 Amendments to the Act's definition of disability. In relevant part, the Act now provides that "the term 'disability' means * * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months * * *." Social Security Act, §§ 216(i) (1) (A), 223(c) (2) (A), 42 U.S.C. §§ 416(i) (1) (A), 423(c) (2) (A) (Supp. III 1967). This is a significant departure from the earlier law which, instead of a minimum twelve-month period, required that a disability "be expected to * * * be of long-continued and indefinite duration * * *." Social Security Act, §§ 216(i) (1) (A), 223(c) (2), 42 U.S.C. §§ 416(i) (1) (A), 423(c) (2) (1964). Because of this requirement under the previous law, several cases have indicated that a remediable physical impairment could not form the basis for a disability claim. E. g., Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965) (dictum); Riemer v. Secretary of Health, Ed. and Welfare, 274 F.Supp. 478, 480 (D.N.H. 1966) (dictum). So, also, the Secretary's Regulations drafted under the former definitions of "disability" stated that "[a]n individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity". 20 C.F.R. § 404.1502(g) (1968) (the Regulations contained the prior disability definitions

at 20 C.F.R. § 404.1501(a), (b) (1) (1968)).[2] The reasoning underlying this rule is simply that a remediable defect cannot amount to an impairment of "indefinite duration".

By reducing the minimum time period over which a disability must extend, Congress has supplanted the rule of these cases. Clearly there are many forms of disability which, though remediable, will last "for a continuous period of not less than twelve months". The shadow of the former law lingers, however, because only nonremediable defects were ever considered physical impairments within the meaning of the Act. Thus the questions for decision are posed in the alternative, taking into consideration the history of the Act's disability definitions.

The first question is whether the new definition of "disability" contemplates a period of time when a claimant may be disabled after his physical impairment has ceased to exist. The question assumes that a "physical impairment" continues only for a period of time for which there is substantial evidence to support a finding that the claimant is actually physically impaired, leaving aside consideration of necessary remedial measures. In other words, it assumes the continuation of the old law notion that the existence of a remedy is antagonistic to the finding of a physical impairment. But, in keeping with the changes in the law, the question then asks whether one may be disabled within the meaning of the Act while undergoing therapeutic rehabilitation necessary for him to enter "any substantial gainful activity".

Alternatively, the second question asks only whether a man is "physically impaired" while undergoing therapeutic rehabilitation necessary for him to enter "any substantial gainful activity".

 Turning to the first question, several decisions have indicated that the Act must be liberally construed to favor

2. The Regulations were amended on January 3, 1968 to conform to the 1965 Amendments. See note 3 infra.

a disability claimant when such construction is reasonable. E. g., Combs v. Gardner, 382 F.2d 949, 956 (6th Cir. 1967); Rasmussen v. Gardner, 374 F.2d 589, 594–595 (10th Cir. 1967); Drafts v. Celebrezze, 240 F.Supp. 535, 538 (E.D. S.C.1965). Since the Act is designed to pay benefits only to those who are unable to work because of an impairment, it seems reasonable to conclude that, so long as the inability is caused by an impairment, the minimum twelve-month period refers to inability to work for twelve months. Or, on the second question posed, by parity of reasoning the court holds that a man is "physically impaired" while undergoing therapeutic rehabilitation necessary for him to enter "any substantial gainful activity".[3]

The question remains, however, whether there is substantial evidence in the record as a whole to support the hearing examiner's determination that plaintiff was not disabled after January 1, 1966. Adopting the constructions of the statute advanced above, the court must determine whether there is substantial evidence that therapeutic rehabilitation undertaken by plaintiff after January 1 was unnecessary to make him fit for "any substantial gainful activity".

The record indicates that plaintiff was receiving therapeutic treatment at the time of the hearing, February 24, 1966 —twelve months and six days from the alleged onset of disability date. There is no indication in the evidence that this treatment was substantially different from that received by plaintiff during the fall of 1965 when the hearing examiner found him to be disabled. The hearing examiner's opinion indicates, however, that he did not ascribe the significance to this treatment that the law, as construed above, requires.

In his opinion, the hearing examiner stated:

Obviously, claimant could not engage in any gainful activity at any time in the summer and fall of 1965 when he was undergoing extensive physical therapy. However, *whatever* the physical therapy prescribed since January, 1966, it would appear the claimant could undergo it without any undue disruption of his ability to engage in gainful work.

(TR p. 15; emphasis added). It would appear that the hearing examiner failed to adequately assess what therapy was required and how the therapy related to plaintiff's ability to return to work.

The incomplete nature of the record on the therapy problem is shown by another statement by the hearing examiner taken from the same page of his opinion. He

---

3. Neither the legislative history of the 1965 Amendments nor the Secretary's Regulations promulgated under them are inconsistent with these conclusions. In S.Rep. No. 404, 89th Cong., 1st Sess. 99 (1965), the Senate Finance Committee noted:

An individual with a disabling impairment which is amenable to treatment that could be expected to restore his ability to work would meet the revised definition if he is undergoing therapy prescribed by his treatment sources, but his disability nevertheless has lasted, or can be expected to last, for at least 12 calendar months.

In relevant part, the Secretary's new Regulation on this question reads as follows:

An individual with a disabling impairment which is amenable to treatment that could be expected to restore his ability to work would be deemed to be under a disability if he is undergoing therapy prescribed by his treatment sources but his impairment has nevertheless continued to be disabling or can be expected to be disabling for at least 12 months.

20 C.F.R. §. 404.1502(f), as amended, 33 F.R. 16 (January 3, 1968). Both the legislative history and the Secretary's Regulation require in substance that a claimant be disabled while undergoing therapy. For purposes of resolving the questions before the court, this approach is rather circular because both the 1965 Amendments and the Secretary's new Regulations (20 C.F.R. § 404.1501(a) (1) (i), (b) (1) (i), as amended, 33 F.R. 15 (January 3, 1968)) describe "disabling" as meaning inability to work caused by an impairment. The constructions reached here avoid this problem of circularity while adhering to the purpose of the Act's new disability definitions.

noted that "[u]nderstandably, claimant was fatigued when he climbed two flights of stairs for the first time in many, many months and a certain degree of toning up is required". (TR p. 15). This quotation indicates that the hearing examiner may have believed plaintiff when he stated:

Even if I climb up a couple flights of stairs, if I climb up a flight of stairs, I feel as if someone was pushing on me and I was carrying a weight upstairs and I get spasms where I have to bend over for no reason at all, I feel as if someone's pushing on my shoulder and I start to go forward and I grab on to something, it passes, but if I just stand straight it just makes me bend right over. It starts in the middle of my back and works up to the shoulder in a straight line.

(TR pp. 53–54; see also TR p. 108).

While there is medical evidence in the record to the effect that plaintiff should not be experiencing this difficulty, the evidence is not substantial. As the result of an examination on September 24, 1965, Dr. Richard D. Mulroy stated:

At the present time he [plaintiff] can do unlimited standing and walking and sitting. He has unlimited use of his arms. He should be restricted on bending and lifting. He should be checked in six to nine months.

(TR p. 164; Ex. 14). Dr. Mulroy, however, examined the plaintiff only once. Moreover, the hearing examiner found that plaintiff was still disabled more than three months after the date of that examination.[4]

Another doctor who examined the plaintiff only once was Dr. George F.

---

4. Other reports of plaintiff's condition were filed by Doctors A. C. Leavitt (July 16, 1965, TR p. 158, Ex. 11); Robert L. Scribner (July 7, 1965, TR p. 160, Ex. 12), Maxwell E. Macdonald (October 27, 1965, TR p. 167, Ex. 16) (October 19, 1965, TR p. 182, Ex. 21) (September 21, 1965, TR p. 183, Ex. 22) (September 14, 1965, TR p. 184, Ex. 23) (August 11, 1965, TR p. 162, Ex. 13) (August 5, 1965, TR p. 179, Ex. 20); and George W. Geiss (December 6, 1965, TR p. 176, Ex. 19) (October 28, 1965, TR p. 165, Ex. 15).

The reports filed by Doctors Leavitt and Scribner, although optimistic about plaintiff's progress, came almost six months before the hearing examiner found that plaintiff was no longer disabled. Their remoteness from the date of recovery established by the hearing examiner precludes their use as evidence of what therapy, if any, was required from January 1, 1966 to February 18, 1966.

Dr. Macdonald's report of October 19, 1965, which does not appear modified by his report of October 27, 1965, stated that:

The patient was advised to continue with his present schedule of physiotherapy. He tells me he has not yet heard from the rehabilitation. He is rather anxious to get started on some work.

This man shows evidence of slow improvement inasmuch as some of his

symptomatic picture has lessened. However, he still presents the same basic pattern as the previous examinations showed.

He still is disabled for normal heavy work.

(TR p. 182). This report could permit the inference that plaintiff was able to engage in a "substantial gainful activity" on October 19, 1965. The hearing examiner found, however, that plaintiff was disabled for more than two months after the date of the report. Moreover, there is no specific finding in the report that the recommended physiotherapy was unrelated to plaintiff's ability at that time to do light work. For these reasons, and because the hearing examiner chose to rely more heavily on the report of Dr. George F. Wilkins (discussed in text below) than on the reports of the other doctors, Dr. Macdonald's opinion is rejected as substantial evidence that therapy was unnecessary for plaintiff to do light work after December 31, 1965.

Finally, Dr. George W. Geiss' opinion of December 6, 1965 concludes that:

During the reporting period this man improved, particularly in relation to his back. However, in the last several weeks of this reporting period there appears to have been slight regression in the condition of the man's lower extremities insofar as the pain in the heels increased somewhat. I cannot account for this. The man is still totally disabled and requires further therapy.

Wilkins. His examination, conducted on December 29, 1965, was relied upon heavily by the vocational consultant and the hearing examiner. Dr. Wilkins concluded that:

> At the present time his symptoms are not severe and he certainly would not appear to be totally disabled for gainful employment. However, because of the persistence of his complaints and because he has been advised by one or more of his physicians that he should not attempt to do a job involving lifting in the future it would appear that he is neither now physically or psychologically amenable to work of this type. Since he seems to feel that he would like to do mechanical drafting this might be advisable to consider for vocational retraining provided of course that his educational and aptitude testing suggest his potential capacity for this type of work.

(TR pp. 186–187; Ex. 24). There is no specific finding as to what therapy, if any, was required to return to work. The doctor may have contemplated that plaintiff would not be returning to work until the completion of his mechanical drafting training, which, as noted above, involved a 60-week course. But the real difficulty in accepting Dr. Wilkins' opinion as substantial evidence that no further therapy was required is found in that part of the doctor's opinion where he notes that "[h]e [plaintiff] states he is able to be up and around and walk and move without any difficulty". (TR p. 186; Ex. 24). The doctor may well have relied upon this, in part, as the basis for his opinion. If this statement was made to the doctor, it would tend to negative any conclusion that further therapy was required. But the statement was controverted by plaintiff's testimony at the hearing, and, as noted above, the hearing examiner gave some indication that he did not disbelieve the plaintiff.

These deficiencies in Dr. Wilkins' opinion render insubstantial all the expert testimonial evidence in the case so far as it pertains to plaintiff's ability to return to work on January 1, 1966 without undergoing further therapy. To provide a basis for the vocational expert's testimony concerning the jobs plaintiff was capable of performing, the hearing examiner addressed a series of questions to Dr. David W. Wilson, the "impartial medical advisor", concerning plaintiff's ability to stand, sit, climb and walk. While the record is not altogether clear on this matter, there is direct testimonial evidence at two different points that Dr. Wilson based his conclusions exclusively on Dr. Wilkins' report of the examination he conducted. (TR pp. 76, 78).[5]

---

(TR p. 178).

> These reports, taken separately or in combination, cannot provide substantial evidence that plaintiff was not disabled within the meaning of the Act as construed here.

5. A statement by Dr. Wilson at one juncture indicates that his answers were based on the conclusory portion of Dr. Wilkins' report, set out in the text above. Note the following colloquy:

> Hearing Examiner: And from this opinion [Dr. Wilkins' opinion of December 30, 1965] you are concluding that certain items * * * that since this Dr. Wilkins mentions that he feels that the claimant could do light work or that he could go to school for training as a mechanical drafter that he thus can walk or sit down.

> Dr. Wilson: Yes. This is the only thing in the report that might pertain to that.

(TR p. 76). Earlier in his testimony, Dr. Wilson was ready to abdicate altogether:

> Hearing Examiner: Are you able to conclude from these reports as to the findings that these physicians [Dr. Wilkins and Dr. Geiss (who reported that plaintiff was totally disabled on December 3, 1965)] have made on physical examination of this man, can you conclude whether he can walk, stand, and how long he can do so?

> Dr. Wilson: No, I don't think I can, I think the reports are incomplete in this regard. * * *

> Hearing Examiner: Then, if I understand your testimony, your answer to my question, correctly, you are unable to

In turn, Dr. Ernest B. Walston (Ed. D.), the vocational expert, based his job availability findings on the premise that plaintiff was able to sit, stand, walk and climb in the manner indicated by Dr. Wilson. The hearing examiner did roughly halve Dr. Wilson's estimate of plaintiff's physical ability in questioning the vocational expert about some of the jobs open. But if the initial assumptions were fundamentally defective, halving them can have no basis in fact and cannot cure their deficiencies.[6]

On the record as a whole, the court holds that there is no substantial evidence to support a finding that plaintiff was able to enter "any substantial gainful activity" within a twelve-month period.

That disposes of the case under the 1965 Amendments to the Act. The question remains, however, whether there was substantial evidence to support the finding of the hearing examiner that plaintiff was not disabled within the meaning of the Act's definitions of "disability" as they stood prior to July 30, 1965.[7] In the context of the facts involved here, the more narrow question is whether plaintiff's injury was remediable. As discussed above, a physical impairment that is expected to be remediable cannot be the basis of a disability claim under the old law. But, given the absence of credibility findings and the fatal defects in the vocational expert's testimony,[8] the court must hold that the present record does not contain substantial evidence that plaintiff's impairment could be expected to be remediable.

On remand, the Secretary should determine whether the therapy plaintiff was receiving in the winter of 1966 related to his ability to return to "any substantial gainful activity". The question must be considered with reference to the above constructions of the Act's disability definitions. Since the plaintiff's credibility concerning his ability to perform certain functions is a key factor in this case, the Secretary should make clear whether he believes or disbelieves plaintiff. Numerous cases have held that subjective evidence of pain must be considered in determining whether a claimant is disabled. E.g., Hayes v. Gardner, 376 F.2d 517, 520 (3d Cir. 1967); Riemer v. Secretary of Health, Ed. and Welfare, 274 F.Supp. 478, 480 (D.N.H.1966).[9]

---

testify as to your conclusions based on these medical reports as to the claimant's ability to stand or sit or walk.

Dr. Wilson: Yes.

(TR pp. 74–75). Questions on these matters were answered, however, at TR pp. 78–79.

6. Lack of substantial evidentiary support for the conclusions of the vocational expert provides an independent ground for remand. In its brief, the Government misconstrues Torres v. Celebrezze, 349 F.2d 342 (1st Cir. 1965) as indicating that "where a claimant for disability benefits whose impairment prevents him from returning to his usual employment has made no attempt to find other employment, the Secretary is under *no* obligation to introduce evidence *as to the general availability of employment for which the claimant is fit and qualified.*" Government Brief at 10. On the contrary, however, the case held that once a claimant shows that he is no longer able to return to his former work, "the burden is now on the government to offer evidence showing there is generally available employment of the kind for which he is fit and qualified. * * *" 349 F.2d at 345. See also Nelson v. Gardner, 386 F.2d 92, 94–95 (6th Cir. 1967).; McMillin v. Gardner, 384 F.2d 596, 598 (10th Cir. 1967); Boyd v. Gardner, 377 F.2d 718, 721–722 (4th Cir. 1967).

The hearing examiner here has found that plaintiff cannot return to heavy work, and the Government has failed, for the reasons indicated in the text above, to offer substantial evidence concerning the jobs available to plaintiff.

7. See note 1 supra.

8. See note 6 supra.

9. Egan v. Gardner, 277 F.Supp. 929 (N.D. Cal.1968), involved circumstances at the hearing similar to those present here. Relevant is the following passage from the court's opinion:

There is an additional reason why the examiner's decision must be reversed. The examiner stated in his opinion that "if claimant is as limited in her move-

Defendant's motion for summary judgment is denied and, pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (1964), this case is remanded to the Secretary for further consideration in accordance with this opinion.

ments as she claims and appears to be, there is no likelihood of her being able to engage in any substantial gainful activity. * * * " He never resolved this credibility issue, however, due to his belief that "a claimant's own statements of his or her symptoms of pain, discomfort and limitation of motion, unless supported by medical evidence, are not sufficient to establish a disability under the Social Security Act. * * * "

This is not a correct statement of the law. While there must be some medical evidence to support a claim of disability —and such evidence existed in this case [as in the instant case; see the opinion of Dr. George W. Geiss, TR pp. 176–178, Ex. 19, quoted at note 4 supra]—symptoms of pain, *or inability to exert oneself*, need not be objectively shown. * * *

277 F.Supp. at 932 (emphasis added).