### Leoncio TORRES GONZALEZ
### v.
### Robert H. FINCH, Secretary of Health, Education and Welfare.
### Civ. No. 16–69.

United States District Court,
D. Puerto Rico.

March 6, 1970.

Julio Williams Andino, Santurce, P.R., for plaintiff.

Candita R. Orlandi, Asst. U. S. Atty., San Juan, P. R., for defendant.

## ORDER AND MEMORANDUM OPINION

FERNANDEZ-BADILLO, District Judge.

The Secretary of Health, Education and Welfare has determined that Leoncio Torres González is not entitled to the establishment of a period of disability or to disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i), 423. Plaintiff filed this action seeking judicial review of that determination, 42 U.S.C. § 405(g). The Court's inquiry is aimed at determining whether the denial of disability is supported by substantial evidence.

Claimant is a forty seven year old man with a seventh grade education and specialized vocational training in the installation of high voltage lines. He performed the work of a lineman for twenty four years and drove a public car for a brief period of four or five months. On November 8, 1967 Torres González was involved in an automobile accident. Eleven days later he underwent a below

elbow amputation of the left forearm at the Puerto Rico Medical Center (Tr. p. 103). Plaintiff claims no other disabling impairment. He had been going to Vocational Rehabilitation but apparently no attempt had been made to fit him with a prosthesis.

Dr. Manual Zuzmán Acosta, an orthopedic surgeon, attended the hearing upon the government's request as a medical adviser and after examining plaintiff found "an extremely short, below elbow stump, totally ineffective for proper function or prosthesis fitting, [with] very little use of motion below the elbow and to complicate the picture it has . . . a frozen shoulder" (Tr. p. 61). Although initially observing that for all practical purposes this was a one-arm individual, he immediately altered this statement to express his conviction that claimant wanted to go back to work and could certainly be rehabilitated (Tr. p. 62). It is granted that Dr. Guzmán believed it would be impractical to start a rehabilitation program while plaintiff's basic needs were unattended. However, on the same token it should be noted that his testimony referred to economic aid to this individual and not to engaging in substantial gainful activity before entering a rehabilitation program. This is patent from the testimony transcribed on pages 63–65, to wit:

"Dr. Guzmán Acosta:

I believe that the first problem that this man needs to solve is his financial situation. Some form, I don't know what practical solution there is, that he will receive sufficient money to sustain himself and his immediate family and then start the rehabilitation program without pressures of his daily living * * *

Examiner: Contrary to what the claimant seems to find in our society, there are financial sources available to individuals who are pressed economically. Two sources that I can think of offhand are Vocational Rehabilitation and the other is Social Security Administration. Consequently, if he were to have a source of income from either of those sources, which do you think would be the preferable course of action that he seek some type of, call it, one-arm employment, or be under—that he undertake his course of rehabilitation?

A. Will you repeat the two alternatives that exist as far as economic aid?

Q. Vocational Rehabilitation and the Social Security Administration?

A. I do believe that this man deserves a chance of rehabilitation instead of converting him into a one-arm individual. I do make the notation that maybe at the end he will become just that, and that this appreciation of mine will be based on superficial impression and doesn't go deep enough to support my original impression, but his work record suggests the possibility that he could return to some form of employment using his good right arm and a well-fitted prosthesis in which he has been—in which proper use he has been trained. So I do believe that the practical solution would be through Vocational Rehabilitation * * *"

The possibility of rehabilitating claimant was continuously touched upon in a significant manner at the administrative hearing. This is well illustrated by the following excerpts taken from the transcript at pages 66–67:

."Examiner: *Assuming that a course of rehabilitation is not offered to the claimant,* could he as a one-arm individual utilizing his right hand perform light or sedentary work activities in either a sitting or standing position?" (emphasis supplied)

"*Dr. Guzmán Acosta:* He certainly could. Of course, all that would have to be tampered with, his educational background most of which positions would be of a supervisory nature, but he certainly from the physical standpoint, he could perform in either the sitting or standing position in sedentary activities.

*Q.* Then the problem would be one of finding light or sedentary jobs that a one-arm individual could perform— then the problem would be one of finding jobs of a light and sedentary nature for a one-arm individual with the work and experience background of the claimant *assuming that there are no other alternatives in the form of rehabilitation".* (emphasis supplied)

"*A.* Yes sir  *  *  *"

At a later stage of the proceeding the examiner presented the vocational expert with a hypothet in which no mention of rehabilitation was made. The inquiry as to claimant's ability to be gainfully and substantially employed relied upon "the claimant utilizing his right arm and right upper extremity and the remaining portions of his body" (Tr. p. 71). A multitude of jobs were then brought forth by the consultant which could be performed by a one-arm, individual such as operating lottery ticket agency,[1] parking lot attendant, spraying, weeding, hoeing and cleaning ditches. These jobs were readily accepted by the examiner in his written opinion. However, no finding, either express or im-plied, was made in said opinion concerning the feasibility of rehabilitation in this particular case despite the fact that the examiner's questions at the hearing were premised on the assumption that no course of rehabilitation were offered plaintiff. The assumption of the non-existence of a rehabilitation program has seemingly been taken as a reality without further consideration and the door apparently closed on the legitimate possibility of converting this individual into a productive laborer who could use both hands after undergoing the rehabilitation process outlined at the hearing.[2] The examiner unmistakably has found that the loss of the left upper extremity at the forearm and the impairment of the left upper extremity by a frozen shoulder, either singly or in combination, do not reach the degree of impairment contemplated by Social Security standards because he can engage in work activity tenable to a one-arm individual.

We cannot in good conscience ignore the fact that this man has a legitimate chance at rehabilitation by submitting to a second amputation and being fitted with a prosthesis. Restricting his work activity to that of a one-arm individual

---

1. In his opinion the Hearing Examiner commented that claimant appeared overly proud to accept a lesser type of occupation than his former job as electrician and had refused a lottery ticket agency although he could earn 1,200 and 1,400 a year doing such a simple job (Tr. p. 27). The only evidence concerning this matter is plaintiff's own testimony at the hearing when he declared that "a lawyer from Legal Aid Services offered to get me a lottery agency and what I told him was that I would first have to get a loan to pay for the initial tickets that you use. That might be $700 to $1000" (Tr. 57).

2. Dr. Guzmán Acosta described the process in these words:
   "  *  *  * I have gotten the impression from this morning that this is a proud man, that this man has always worked and maybe, I got the impression that he wants to go back to work again. Certainly, he can be rehabilitated. He will need an amputation above the elbow because the stump which meas-ures less than four inches below the elbow, is totally useless, if we are going to fit a prosthesis which will work adequately and he scarcely has two and a half inches. So with the rehabilitation program an above-elbow amputation would have to be performed in order to fit the prosthesis adequately, that shoulder will have to be loosened up. A year plus has gone by and it's not going to be an easy job but it can be done and he looks like the type of man that may work on it. He will have to be manipulated under anesthesia, the shoulder returned to its proper function and maintained as such with proper exercise. Even if all that is accomplished within a reasonable period of time and he is provided with a prosthesis, which I should add that locally properly fitting prosthesis are usually a problem, I doubt very much that he will return to anything related or with his original occupation—related or close to his original occupation."

seems, at the least, unfair when he could adequately perform as a two arm individual and when the passage of time can work against that possibility. Dr. Guzmán Acosta when describing the rehabilitation process testified that "a year plus has gone by and it's not going to be an easy job but it can be done and he looks like the type of man who can work on it." He also observed that "a year would go by before we could anticipate returning this man to some practical performance." In the case of Santagate v. Gardner, 293 F.Supp. 1284 (D. Mass., 1968) the Court held that a man is physically impaired while undergoing therapeutic rehabilitation necessary for him to enter substantial gainful activity and indicated that "the Act must be liberally construed to favor a disability claimant when such construction is reasonable." Indeed it seems reasonable to believe that a man who should and could undergo therapy to rehabilitate himself within a twelve month period in order to engage in substantial gainful activity without the obvious handicap of a missing arm should be favored by the Act. The situation would certainly be different if claimant had already been fitted with a prosthesis and done nothing with it or if he had clearly refused a rehabilitation program. The record before the Court is incomplete on the rehabilitation and therapy matter although it is a very important aspect of this man's claim. The testimonial evidence of the orthopedic surgeon[3] leads the mind to believe that an attempt at rehabilitation is both necessary and humanitarian. The vocational expert's testimony concerning jobs that claimant could do as a one-arm individual describes them as jobs that nobody wants and jobs that are not that good because they under utilize the man's residuals, (See pages 74–75).

On remand, the examiner is hereby directed to consider and determine the rehabilitation issue discussed in this decision and to make a specific finding or findings in that regard in order to cure the deficiencies of the record. The case is thus remanded to the Secretary of Health, Education and Welfare for further proceedings consistent with this opinion.

---

3. The rest of the medical evidence on record is not contrary to this. The remaining medical reports simply re-affirm the fact that this man is an amputee and that this is his only impairment.