**Miriam SEIDMAN**

v.

**Elliott L. RICHARDSON, in his capacity as Secretary, Health, Education and Welfare.**

Civ. No. 72–823–K.

United States District Court,
D. Maryland.

March 22, 1974.

Sheldon H. Braiterman, Baltimore, Md., for plaintiff.

George Beall, U. S. Atty., Gerard P. Martin, Asst. U. S. Atty., Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

Plaintiff, a lady who had been continuously employed selling ladies' and children's shoes in a well-known Baltimore retail specialty store for approximately 24 years, slipped on the ice en route to work on March 3, 1969, fractured her left ankle, and underwent corrective surgery which included screw fixation of the bone pieces. Later, the screw was removed in a second operation. At the time of her injury, plaintiff's average weekly income was $186. There apparently is agreement between the parties that plaintiff's ankle has not permitted, did not permit at the time of the administrative hearing on March 21, 1972, and will not permit in the future, her return to work as a shoe saleslady. However, in his opinion in which he held plaintiff entitled to Social Security disability benefits from March 3, 1969 to June 30, 1971, but not thereafter, the Hearing Examiner wrote, *inter alia*:

> In his informal brief her counsel states; "The Claimant takes the position that she has a physical disability which prohibits her from doing any substantial gainful activity within the scope of the Social Security Act until such time as she has completed her

program of rehabilitation at the Baltimore Community College and this condition has existed since June 1971 and will continue until June 1973 when the course is completed." Counsel cites two cases to support his premise. The second case cited, Dabravalskie v. Gardner, 281 F.Supp. 919 (D.C.Pa., 1968) concerns a man who had done only unskilled, heavy, and laborious work, who was not qualified to do any other kind of work, and a decision of a hearing examiner which denied benefits and which followed the testimony of a Vocational Expert that the man could work as a file clerk, timekeeper, or parts man, was held as not being based on substantial evidence. This decision points up the factor that recommended work must be suitable in consideration of the claimant's age, education, and past work history.

In Santagate v. Gardner, 293 F.Supp. 1284 (D.C.Mass., 1968), the first case cited, the court discussed in clearer terms the issue here raised by counsel. There, a 33 year old man, with an 8th grade education who had been a "burner," a laborious type job, was found to be disabled for a period of only 10 months and 10 days; for entitlement, 12 continuous months are necessary. The court found that the man was undergoing the same therapeutic rehabilitation after the 12th month as he had undergone during the period of time he was under the disabling injury, and that, therefore, he met the 12 month requirement for entitlement. The court also reasoned that a man is "physically impaired" while undergoing the therapeutic rehabilitation necessary for him to enter "any substantial gainful activity." The case was sent back for the further Administrative determination as to whether there was substantial evidence that the therapeutic rehabilitation being undertaken was unnecessary to make the man fit for "any substantial gainful activity." Therapeutic generally means to cure, to heal, or to preserve health. Even if

we consider the Claimant's quest for a college degree to be of a therapeutic nature, which we do not, we *still* do not conclude that the undertaking is necessary to make the Claimant fit for any substantial gainful activity. With the attainment of a high school equivalency rating, and in consideration of her past employment record, the Claimant had very marketable vocational assets.

Although the claimant complains of pain in the left ankle, and uses a cane, no significant therapy is needed. She has been getting around, in her automobile and by walking, and she has been active in her family life and in pursuit of her college credits.

The Claimant has demonstrated her ability to perform in sedentary and light categories. She has had a successful *selling career*, and is a relatively young woman. There are hundreds of jobs in this large metropolitan area that she could have successfully performed since April 1971. An obvious group of such jobs are those connected with the several schools that she has attended, as a cashier, as a file girl, and as a general clerk. There are many selling jobs in department stores which do not require the ladder climbing connected with her former job. In addition, there are such jobs as a ticket seller in a theater or other recreational establishment, as a credit clerk, and as a general clerk in many types of business establishments, which are within the Claimant's residual capabilities. [Op. of Hearing Examiner, pp. 3–4.]

After the Appeals Council affirmed the Hearing Examiner's decision, plaintiff instituted this action pursuant to 42 U.S.C. § 405(g). Herein, the sole question raised is whether plaintiff's disability benefits may be terminated while she is engaged in a rehabilitative program.

Plaintiff was represented at the administrative hearing by her counsel of record in this Court. The only references in the transcript of that hearing to rehabilitation are the following:

HEARING EXAMINER: Now the vocational rehabilitation visit, you want to tell me about that, did you actually go to, was it Gilbert Avenue, is that where they have their place?

CLAIMANT: No, they have it at Mt. Wilson, Mt. Wilson Hospital off of Reisterstown Road.

HEARING EXAMINER: I didn't know that but that must be a branch of, that must be the county, Mt. Wilson, when did you go out there?

CLAIMANT: County yes. The last time? I've been out there several times.

HEARING EXAMINER: Several times? What would they get in touch with you by mail?

CLAIMANT: Or call me.

HEARING EXAMINER: Or call you and ask you to come out?

CLAIMANT: Yes.

HEARING EXAMINER: Why did they want you to come out?

CLAIMANT: Well, the first time they called me, they wanted to know if I wanted to be rehabilitated and then I had to go back after they got my marks from the high school equivalency and they sent me to a psychologist and they saw me after that and I don't think I've been out there since I started school. I've spoken to the man about this term.

HEARING EXAMINER: You told him you had planned on going to the Community College, did you?

CLAIMANT: Well, the psychologist said I couldn't do anything but go to school so they told me that, you know I should.

HEARING EXAMINER: Well, they were contacting you to come out until you actually decided to go to school, is that correct?

CLAIMANT: Well, I went to school after they contacted me.

HEARING EXAMINER: Is that all you wanted to tell me about that trip to the vocational rehabilitation?

CLAIMANT: .It's all been evaluated through a psychologist.

HEARING EXAMINER: And you say he found that you were?

CLAIMANT: He said I didn't have a formal education and this is what I needed.

HEARING EXAMINER: For what kind of a job?

CLAIMANT: Well, he suggested several things, but everything needed an education, of course, he suggested several things, that I would have to stand on my feet so, I had to take something, be trained for something that I knew I could do after I was trained for.

HEARING EXAMINER: Such as filing, would that be one of the things he suggested?

CLAIMANT: Well, no, he suggested either accounting or secretarial or hygienist or therapist you know this is what my equivalency, I mean, you know what he put me down for but then when I went to school and I was having so much trouble with my foot I thought the best thing would be to get something that I could sit at. [Tr. 51–53].

A person insured under the Social Security Act is entitled to disability benefits only during such time as he is unable, due to a physical or mental impairment, to engage in *substantial gainful employment*. Those last three words are defined by the Social Security Administration in its regulations (20 C.F.R. § 404.1532 (1972)) as follows:

* * * Substantial work activity involves the performance of significant physical or mental duties, or a combination of both, productive in nature. Gainful work activity is activity for remuneration or profit . . . . In order for work activity to be substantial, it is not necessary that it be performed on a full-time basis . . . .

It is immaterial that the work activity of an individual may be less, or less responsible, or less gainful, than that in which he was engaged before the onset of his impairment.

In Santagate v. Gardner, 293 F.Supp. 1284 (D.Mass.1968), the plaintiff seemingly was engaged in a sixty-week training course in mechanical drafting as recommended by the Massachusetts Rehabilitation Commission. *Id.* at 1287. The rehabilitation apparently also involved physical therapy following multiple fractures of the back and other portions of the body suffered by the claimant in a fall from a truck after being pushed by a swinging steel beam during the dismantling of a building. The District Court, in the course of remanding the case for further proceedings at the administrative level, noted, *inter alia* (at 1289):

* * * It would appear that the hearing examiner failed to adequately assess what therapy was required and how the therapy related to plaintiff's ability to return to work.

The Social Security Act itself focuses upon vocational rehabilitation in relation to disability and disability benefits. Thus, 42 U.S.C. § 422 provides, in part:

*Rehabilitation services—Referral for rehabilitation services*

(a) It is declared to be the policy of the Congress that disabled individuals applying for a determination of disability, * * * shall be promptly referred to the State agency or agencies administering or supervising the administration of the State plan approved under the Vocational Rehabilitation Act for necessary vocational rehabilitation services, to the end that the maximum number of such individuals may be rehabilitated into productive activity.

(b)(1) Deductions, in such amounts and at such time or times as the Secretary shall determine, shall be made from any payment. or payments under this subchapter to which an individual is entitled, until the total of such de-

ductions equals such individual's benefit or benefits under sections 402 and 423 of this title for any month in which * * * an individual entitled to disability insurance benefits, refuses *without good cause* to accept rehabilitation services available to him under a State plan approved under the Vocational Rehabilitation Act. * * *

* * * * * *

(c)(2) For purposes of sections 416(i) and 423 of this title, any services rendered by an individual during a period of trial work shall be deemed not to have been rendered by such individual in determining whether his disability has ceased in a month during such period. * * *[1]

In Lopez v. Cohen, 295 F.Supp. 923 (S.D.Tex.1969), the Hearing Examiner had taken so-called "trial work" into consideration in concluding that disability did not exist. Judge Singleton, noting the restriction set forth in 42 U.S.C. § 422(c)(2), remanded the case for further administrative hearings. In this case, no trial work was undertaken by plaintiff. No physical rehabilitation was being undergone by plaintiff at the time the Hearing Examiner determined plaintiff was *no longer* disabled, *i. e.,* April 30, 1971, or on the date the hearing was held, *i. e.,* March 20, 1972. However, plaintiff was at both of said times enrolled in a program at the Baltimore Community College, a program which she expected to complete in June, 1973. *Plaintiff* apparently contends that she is entitled to receive disability benefits so long as she diligently engages in such a program. Plaintiff seemingly does not dispute the Hearing Examiner's finding that she was not disabled on and after April 30, 1971 from performing available work as a cashier, a file girl, a ticket seller, a credit clerk or as a general clerk. Nor does she raise any question that the pay she

could expect to earn in such work would be less than $140 per month (*see* 20 C.F. R. §§ 404.1534(b)–(c)) or that such pay would be so small in amount as to render such work for that reason not "substantial". But she does complain of her disability status being terminated during her participation in what she contends is a rehabilitation program.

In Stewart v. Cohen, 309 F.Supp. 949 (E.D.N.Y.1970) claimant, while employed as a waiter on ocean-going vessels, injured his knee and was found permanently unfit for duty at sea. A medical officer at a United States Public Health Service Hospital recommended vocational rehabilitation. Subsequently, a New York State Rehabilitation Counselor arranged for the claimant to go to a business school for vocational training. Judge Judd (at 952) described plaintiff in that case as

* * * a high school graduate [who] . . . has completed two years of college. While enrolled in college, plaintiff studied to become a teacher and, in fact, received a teaching certificate from New York University, and taught for three years at the Meat-Cutting School of Manhattan until it closed. He is proficient in foreign languages and has several hobbies.

Plaintiff has not been employed since February, 1965, except for the unsuccessful experiment in the summer of 1967. There was evidence that after his disability benefits were terminated, he sought numerous teaching and clerical jobs, but to no avail.

In remanding because of procedural and/or evidentiary deficiencies in connection with the administrative hearing, Judge Judd (at 954) raised what he termed a "question of legislative intent for the guidance of the Department at the next hearing". Noting that the Hearing Examiner had considered claimant's participation in a rehabilitation program as evidence of the latter's not

[1]. Sections 416(l) and 423 define disability, term of disability, and eligibility and disability benefits.

being disabled and that if claimant had not been willing so to participate he would have been penalized under 42 U.S.C. § 422(b),[2] Judge Judd wrote (at 955):

> * * * In short, HEW takes away with one hand what it has offered with the other. Since the effect of Section 222 [of the Act, 42 U.S.C. § 422 was not argued before, the court will not direct that the claim be allowed, but will leave the point for the Secretary to consider after remand.

Also, Judge Judd, after quoting the provisions of 42 U.S.C. § 423(d)(2) which provides that in order for a claimant to be held disabled, he must be "not only unable to do his previous work, but [he] cannot [be able to] considering his *age, education,* and *work experience* engage in any other kind of *substantial* gainful employment" [emphasis added], wrote (at 955–956):

> Plaintiff contends that low-paid jobs requiring little or no skill are not substantial for a person with a college background. There is much to be said for plaintiff's position. If a small investment of time and disability payments is all that is necessary to place an educated individual in a substantial job, the price is indeed small as compared with forcing such a person to take a job which is not commensurate with his education and background.
>
> Defining "substantial" to encompass jobs that are commensurate with a person's age, education, and work experience, if at all practicable, is entirely consistent with the overriding purpose of the Social Security Act.
>
> Since this point was apparently not weighed by the Department, we again do not use it as a basis for directing that the claim be allowed, but leave its application to the facts to be considered after remand.
>
> * * * No consideration was given to plaintiff's right to "vocational rehabilitation services" as a "handi-

capped individual" under the Vocational Rehabilitation Act. 29 U.S.C. § 41. The term "vocational rehabilitation services" includes the right to "maintenance, not exceeding the estimated cost of subsistence, during rehabilitation." 29 U.S.C. § 41(a)(2)(B).

29 U.S.C. § 41 must be read in the light of 29 U.S.C. § 38 which provides:

> *Promotion of employment opportunities*
>
> The Secretary of Labor and the Secretary of Health, Education, and Welfare shall cooperate in developing, and in recommending to the appropriate State agencies, policies and procedures which will facilitate the placement in employment of individuals who have received rehabilitation services under State vocational rehabilitation programs, and, together with the chairman of the President's Committee on Employment of the Handicapped, shall develop and recommend methods which will assure maximum utilization of services which that committee, and cooperating State and local organizations, are able to render in promoting job opportunities for such individuals.

29 U.S.C. § 41(a)(1) and (2) provide, in part:

> For the purposes of sections 31 to 42b of this title—
>
> (a)(1) The term "vocational rehabilitation services" means the following services * * *.
>
> (2) Such term also includes, after full consideration of eligibility for any similar benefit by way of pension, compensation, and insurance, the following services and goods provided to, or for the benefit of, a handicapped individual:
>
> * * * * * *
>
> (B) maintenance, not exceeding the estimated cost of subsistence, during rehabilitation * * *.

---

**2.** Quoted in pertinent part at p. 1303 *supra.*

As in Stewart v. Cohen, no consideration was given administratively in this case to plaintiff's right to "vocational rehabilitation" under 29 U.S.C. § 38 et seq. Nor is the record in this case clear as to any details concerning plaintiff's rehabilitation, that is, who advised her to do what and when, whether or not she made her own arrangements and decisions after a casual suggestion, who paid for her educational courses, etc. On remand, all relevant and material facts pertaining to plaintiff's referral to and consultation with any State of Maryland or other vocational counselors, and pertaining to plaintiff's participation in any retraining program, should be determined. Further, on remand, the Secretary should decide whether a person

(a) who because of his injury cannot without further training be employed in a job paying anything approaching his pre-injury job earnings, but

(b) who could reasonably be expected to be employable—after retraining—in a job paying well in excess of any job obtainable without such retraining,

is, without such retraining, a person capable of obtaining "substantial, gainful employment" in view of his "age, education and work experience".

In asking for such determinations to be made on remand by the Secretary, this Court is cognizant of the Social Security Administration's own regulation set forth at p. 1303 *supra*. Age, education and work experience of a claimant perhaps relate, under that interpretation, solely to ability to perform any job. Thus, that regulation may require the conclusion that available work is not to be deemed insubstantial because the age, education and work experience of the claimant qualify the injured claimant for a much higher paying job after available rehabilitative training in which he is willing and able to engage. However, it would seem preferable, in terms of both the interests of society generally and of the individual claimant, for the Social Security Administration to continue to pay disability payments to a person undergoing rehabilitative training instead of cutting off disability payments and penalizing such a person (1) for engaging in such training and (2) at the same time for not taking a job paying much less than he was earning before injury or could reasonably be expected to earn after retraining. While the judgment-call on that issue may lie within the legislative realm and be for the Congress itself and/or for the Social Security Administration exercising delegated legislative authority, the latter agency should, at the very least, address itself specifically to that issue.

Additionally, the Secretary, upon remand, should consider the interrelationship of the provisions, policies and purposes of the Social Security Act and the Vocational Rehabilitation Act. "The Secretary of Health, Education and Welfare is Chairman of the National Advisory Council on Vocational Rehabilitation, and has a responsibility for the proper administration of that Act." Stewart v. Cohen, *supra* at 956. Accordingly, on remand, the Secretary should make findings and rulings with regard to plaintiff's entitlements under the Social Security Act and, in so doing, whether the Vocational Rehabilitation Act has any effect thereon; and whether plaintiff engaged in her schooling program under a State "plan" of the type referred to in 42 U.S.C. § 422(b). If plaintiff was directed to, and had not engaged in, such a program, then plaintiff might have lost all or part of her disability payments for not so doing. If in this case, plaintiff's disability payments were cut off for doing what she had to do in order not to have those same payments reduced under 42 U.S.C. § 422(b), that fact should upon remand be determined by the Secretary. Perhaps plaintiff, as a person able to engage in some type of substantial gainful employment, is not entitled to receive Social Security disability benefits while she pursues retraining under a State rehabilitation program. But if that is the case, such a person should not be lulled

into the belief that he will continue to receive disability payments if he does engage in a suggested rehabilitation plan. To paraphrase Judge Judd (at 955), HEW should not take away with one hand what it has offered with the other hand. It is not beyond the realm of possibility that principles of equitable justice, under those conditions, would cause a court to conclude that it could not permit the Secretary to stop paying such a person disability payments while the latter engaged diligently in an officially suggested rehabilitation program, at least not unless payments of subsistence are made by those authorized so to do, pursuant to 29 U.S.C. § 41, during the period of the program of rehabilitation upon which such person may have been required or urged to embark. The record in this case does not establish whether such conditions do or do not in fact exist in this case. But on remand the facts in that regard should be determined.

For the reasons stated in this opinion, this case is hereby remanded for further administrative hearings. It is so ordered.