Theodore SCHLABACH, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE, Defendant.

No. S 76–183.

United States District Court,
N. D. Indiana,
South Bend Division.

May 23, 1978.

William R. Long, John R. Frechette, Elkhart, Ind., for plaintiff.

David T. Ready, U. S. Atty., South Bend, Ind., Griffin B. Bell, Atty. Gen. of the United States, Washington, D. C., for defendant.

MEMORANDUM AND ORDER

I.

ALLEN SHARP, District Judge.

On March 6, 1975 the Plaintiff filed his Application for Disability Insurance Benefits. The Plaintiff appeared pro se at his hearing before the Administrative Law Judge (hereinafter A.L.J.) who found Plaintiff ineligible for disability insurance benefits in a written opinion dated April 9, 1976. On May 12, 1976 the Plaintiff filed for review of the decision of the A.L.J. by the Appeals Counsel, Bureau of Hearings & Appeals, Social Security Administration. The Appeals Council affirmed the decision of the A.L.J. on September 7, 1976. Thereafter on October 22, 1976 the Plaintiff filed for

review of the decision of the Appeals Council in this Court. Subsequently thereto, the Defendant appeared and filed an Answer, and a transcript of the administrative record.

Plaintiff's Motion for Summary Judgment was filed May 1, 1978 and served on counsel for defendant. Under Rule 7(b) of the rules of this Court the Defendant was given 15 days to file response including opposing affidavits and exhibits. None have been filed and no request for extension of time has been made by Defendant.

This matter is now before the Court on Plaintiff's Motion for Summary Judgment; the Defendant's Motion for Summary Judgment having been denied for inexcusable delay and failure to comply with local rules.

Courts are required to do more than merely glance through administrative records to determine if there is some evidence to support the A.L.J.'s decision. It has been said of the standard of substantial evidence:

"This does not mean however that the findings of the administrative agency must be blindly accepted. On the contrary, the statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action. *Flack* mandates a critical and searching examination of the record, and the setting aside of the Secretary's decision when necessary to ensure a result consistent with congressional intent and elemental fairness." (Citations omitted). *Black v. Richardson* (D.S.C.1973) 356 F.Supp. 861.

The case cited in *Black v. Richardson,* supra, is *Flack v. Cohen,* 413 F.2d 278 (4th Cir. 1969). At pages 279–280, the Circuit Court for the Fourth Circuit spoke at length of the rigorous search that the District Court must make in determining if the A.L.J.'s decision is supported by substantial evidence.

"It is elementary that the Secretary's findings must be accepted if they are supported by substantial evidence. *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir. 1966). It is equally clear that the reviewing court may not try the case de novo and

substitute its own findings for those of the Secretary. *Hicks v. Gardner,* 393 F.2d 299 (4th Cir. 1968). From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action. The guiding standard was well expressed in the landmark case of *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456, 466 (1951). There the Court was discussing the substantial evidence test as it applies to review of decisions of the NLRB. However, the applicable rule is the same in the present context. Justice Frankfurter declared: '. . . (C)ourts must now assume more responsibility for the reasonableness and fairness of (administrative) decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board (agency) keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appears substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's [agency's] findings are entitled to respect; but they must nonetheless be set aside when the record before a court of appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses of its informed judgment on matters within its special competence or both.'

"Courts reviewing administrative determinations and social security cases must be no less attentive to this command. As Judge McAllister of the 6th Circuit pointed out in *Miracle v. Celebrezze* (351 F.2d 361) 382–383 (6th Cir. 1965):

'The review of cases for disability benefits under the Social Security Act is oner-

ous from many aspects. The case before the hearing examiner is heard informally. This means that there is practically no examination or cross-examination of any witnesses, except the claimant himself, usually a man whose life has been one of hard labor, and with little education; and, sometimes, a Vocational Counselor. The record, for the most part, consists of letters and written statements regarding the disability claim, the extent of it, or the lack of it. Many of these statements consist of official printed forms of applications and reports filled in, in the handwriting of various individuals; and their reproduction in the record often requires laborious decipherment. These records call for searching investigation by the district courts, and further searching investigation by appellate courts.'

"These features of the administrative process in the disability area dictate that the courts closely scrutanize the administrative proceedings to insure a result consistent with congressional intent and elemental fairness."

While the standard of substantial evidence is set forth by statute:

"However, the meaning of 'substantial evidence' here is still a judicial question, . . ." *Little v. Department of Health, Education and Welfare, Social Security Administration* (S.D.Miss.1959) 173 F.Supp. 276, 277.

The interpretation of statutes has always been a traditional function of the judiciary.

"The courts are not to try the case de novo. At the same time, they must not abrogate their traditional functions; they cannot escape their duty to scrutanize the record as a whole to determine whether the conclusions reached are rational. [Citations omitted]." *Oppenheim v. Finch* (4th Cir., 1974) 495 F.2d 396, 397.

To fulfill this function of scrutinizing the record to determine if the decision of the A.L.J. is supported by substantial evidence, the Court must consider all evidence, not just the evidence favorable to the decision of the A.L.J.

"But in determining whether there is substantial evidence to support the examiner's findings a reviewing court must consider both evidence that supports, and evidence that detracts from, the examiner's conclusions. We cannot affirm the examiner's conclusion simply by isolating a specific quantum of supporting evidence." *Day v. Weinberger* (9th Cir., 1975) 522 F.2d 1154, 1156.

"In judicially reviewing whether the evidence supporting an administrative finding is substantial, '. . . whatever in the record fairly detracts from . . .' the weight of the evidence must be taken into consideration. *Universal Camera Corp. v. National L. R. Bd.*, supra, 304 U.S. 474, 71 S.Ct. 456, 95 L.Ed. at 467 (headnote 3). '. . . (I)f, for example, reliance has been placed upon one portion of the record to the disregard of the overwhelming evidence to the contrary, the courts are . . . bound to decide against the secretary . . .' *Thomas v. Celebrezze*, supra, 331 F.2d at 543(3)." *Forbes v. Finch* (E.D.Tenn.1969) 307 F.Supp. 1000, 1004.

In discharging its judicial functions, the Court has some power to evaluate conflicts in the evidence in the record. As the Court said in *Tyler v. Weinberger* (E.D.Va.1976) 409 F.Supp. 776, 785:

"However, the Court must consider both evidence that supports and detracts from the decision below." [Citations omitted] "Thus, the Court must not resolve but it must weigh conflicting evidence, at least insofar as is necessary to determine that the evidence in support of that decision is substantial in relation to the evidence as a whole." [Emphasis added].

"In conducting a review under 42 USC Section 405(g) this Court is required to examine the facts contained in the administrative record, evaluate the conflicts, and make a determination therefrom whether the facts support the several elements which make up the ultimate administrative decision. *Nickol v. U. S.* (501 F.2d 1389) (10th Cir. 1974); *Heber Valley Milk Co. v. Butz*, 503 F.2d 96 (10th Cir. 1974)" *Blackmon v. Weinberger*

(E.D.Okl.1975) 400 F.Supp. 1282, 1285–
·1286. (Emphasis added.)

It is therefore clear that the standard of substantial evidence is not the simple standard which would insure affirmation of the Secretary's decision as it appears to be from reading the statute. The Courts cannot mechanically accept the findings of the A.L.J. Rather, the Courts must judicially determine what is substantial evidence, and to do so, the Courts must make a thorough and critical search of the entire record of the proceedings before the A.L.J. Unlike the standard of appellate review, wherein the Court will look at the facts most favorable to the judgment below, the Court, in reviewing denials of Social Security disability benefits, must look at the facts which detract from or negative the findings of the A.L.J. The A.L.J. and the Courts cannot isolate a few facts and determine that this is substantial evidence to deny disability benefits, nor can they analyze the various ailments of a claimant separately, but must consider the total effect of the various ailments on the question of disability. Because of the requirement of reviewing facts which detract from the A.L.J.'s opinion, and because of the informal nature of the proceedings and the evidence presented before the A.L.J., the Court must weigh the evidence heard at the hearing before the A.L.J., and must resolve conflicts in the evidence, unlike the usual procedures for appellate review. When a thorough search of· all the facts, and resolution of conflicts in the evidence has been made, then the Court may determine if a reasonable man would draw the same conclusion from all the evidence that the A.L.J. drew.

All of the foregoing must be accomplished everbearing in mind the congressional intent of the Act, and the requirements of fundamental fairness. As the District Court in *Little*, supra, stated:

"The rigidity of requirements no doubt was intended to prevent abuses by undeserving claimants. At the same time, it must be assumed that the lawmakers intended to provide relief in meritorious cases, until reaching the age of retirement under the Social Security Act, for those who, through unfortunate circumstances are deprived of the ability to earn a living for themselves and their families." At page 277.

## II.

The Plaintiff has attached to his Brief an Affidavit by his attending physician, Dr. Marvin Mishkin, and two (2) exhibits from reports of the Indiana University Medical Center. This Affidavit helps explain the nature and cause of Plaintiff's disability, which the A.L.J. apparently did not understand, and shows the plaintiff's subsequent debilitating ailments.

This raises the collateral issue of whether or not such an Affidavit and exhibits are admissible on summary judgment in a Social Security Administration disability insurance benefit case. The very nature of a summary judgment proceeding lends itself to the admission of extraneous material, and Federal Rule of Civil Procedure 56 specifically provides for the introduction of affidavits and exhibits. Conversely, Section 405(g) prohibits the District Court from conducting a trial de novo. Therefore, judicial construction of Section 405(g) must be made.

The 6th Circuit has adopted the practice of admitting additional evidence in Social Security disability benefits cases. In *Estep v. Richardson* (6th Cir. 1972) 465 F.2d 969, 970, that Court said:

"Although this motion is not clearly stated, it is clear that appellant sought an order remanding the case to the Secretary for further consideration. Since appellant filed a medical report in the District Court which apparently is material to his disability claim, the District Court may decide to remand the case to the Secretary for rehearing in the light of the new evidence. See *Carnevale v. Gardner*, 393 F.2d 889, 891 N. 1 (2d Cir. 1968)."

Notwithstanding the fact that the Court of Appeals affirmed the decision of the District Court, the Court of Appeals nonetheless remanded the case to the District Court for the District Court's determination of

whether the matter should be remanded to the Secretary for further hearing based upon the evidence introduced before the District Court.

In *Sweeney v. Gardner* (D.Mass.1967) 277 F.Supp. 622, 627, the Court ruled:

"The extent of the pain which Plaintiff would suffer after the second operation if he undertook any of the several jobs that would be otherwise available to him is a crucial question as to which further evidence is needed. See *Firth v. Celebrezze*, 5 Cir., 1964, 333 F.2d 557, 561. It is clear that pain, if substantial, can be disabling as long as it results from a medically determinable impairment. *Page v. Celebrezze* (5 Cir., 1963) 311 F.2d 575."

"The Court's decision to remand is also based upon two documents attached to Plaintiff's memorandum to support dismissal of Defendant's motion for summary judgment. These are letters from Dr. Anderson to Plaintiff's attorney in which the doctor indicates his belief that the surgery (presumably, the two scalenectomies) were of 'short beneficial duration' and that Plaintiff was still disabled. Although the Court is limited to the record in determining whether the findings of the Secretary are supported by substantial evidence, extraneous matters may be considered in determining whether to remand 'on good cause shown'. *McDaniel v. Flemming*, D.Md., 1961, 190 F.Supp. 270. It has been said that in determining whether good cause has been shown under Section 205, 'courts must not require such a technical and cogent showing of good cause as would justify the vacation of a judgment or the granting of a new trial, where no party will be prejudiced by the acceptance of additional evidence and the evidence offered bears directly and substantially on the matter in dispute.' *Blanscet v. Ribicoff*, W.D.Ark., 1962, 201 F.Supp. 257, 265, quoted in *Sage v. Celebrezze*, W.D.Va., 1965, 246 F.Supp. 285, 288."

In *Terio v. Weinberger* (W.D.N.Y.1976) 410 F.Supp. 209, the Court denied the Government's Motion for Summary Judgment and remanded the case for further consideration. The Secretary had decided the claimant was not disabled on the basis of a consulting physician's statement that the Plaintiff retained a mild partial impairment. The Plaintiff's attending physician wrote a letter more than one (1) year after the determination of ineligibility to clarify his previous opinion that the claimant could not return to work. The Court stated, at page 213:

"This letter may be referred to by the court in determining whether to remand the case, as Plaintiff has requested. 'Although the court is limited to the record in determining whether the findings of the Secretary are supported by substantial evidence, extraneous matters may be considered in determining whether to remand 'on good cause shown' *Story v. Richardson*, 356 F.Supp. 1182, 1184 (N.D. Tenn.1972), citing *Sweeney v. Gardner*, 277 F.Supp. 622, 627 (D.C.Mass.1967). . . . .' "

"This new evidence constitutes 'good cause shown' because it would seem to be probative of the meaning of the expert medical opinion evidenced. It has a bearing upon the question of the Plaintiff's ability to perform her customary job, or to engage in any substantial gainful activity, questions which the Secretary has resolved, though upon vague and therefore deficient evidence. The requirements for 'good cause shown', as set out in *Hess v. Weinberger* 363 F.Supp. 262, 267 (E.D.Pa.1973), and *Schad v. Finch*, 393 F.Supp. 595, 599 (W.D.Pa.1969) are therefore satisfied."

In *Brown v. Secretary of Health, Education and Welfare* (E.D.Wis.1975) 403 F.Supp. 938, a claimant sought review by the District Court of a decision by the Secretary denying disability benefits. The claimant filed a medical report with the District Court, substantiating claimant's subjective pain. The District Court remanded to the Secretary for reconsideration, stating, at pages 941–942:

"As to the propriety of remand to the Secretary for the taking of additional

evidence, however, the standard is one of 'good cause shown' without corresponding limitation to the confines of the administrative record: [Section 405 deleted]. [This means that for remand the court does not have to stay only within the record]."

. . . . .

"Thus, while the law is clear that a federal district court is precluded from any consideration of newly submitted evidence in its review of the findings of the Secretary by virtue of the prohibition against a de novo review, the law is equally clear that extraneous matters may be considered in determining the existence of 'good cause shown' incident to a request for remand to the secretary for the purpose of taking additional evidence." [Section 405 and citations omitted].

. . . . .

"As heretofore noted, Section 205(g) of the Social Security Act authorizes remand to the Secretary for the taking of new or additional evidence upon a showing of 'good cause'. The decision of whether or not a remand of the case to the Secretary is necessary lies in the sound discretion of the district court. *Dunn v. Richardson*, 325 F.Supp. 337, 347 (W.D.Mo.1971). In discussing parameters of 'good cause,' courts have most often cited the admonition of *Wray v. Folsom*, 166 F.Supp. 390, 395 (W.D.Ark.1958): ' "The Social Security Act is to be liberally construed as an aid to the achievement of its Congressional purposes and objectives. Narrow technicalities which proscribe or thwart its policies and purposes are not to be adopted." ' "

"In these circumstances, courts must not require such a technical and cogent showing of good cause as would justify the vacation of a judgment of the granting of a new trial, where no party would be prejudiced by the acceptance of additional evidence and the evidence offered bears directly and substantially on the matters in dispute." [Citations omitted].

"In view of this generally accepted standard, there is little question that the 'new evidence' appended to her brief by plaintiff warrants remand to the Secretary for his consideration. Unlike prior medical reports which indicated no finding of an organic cause of plaintiff's pain, the report of Dr. Salinsky attest to the existence of a nerve route syndrome. It is therefore not cumulative of other evidence in the record, [citations omitted] and is most certainly relevant and probative."

 It is clear from the foregoing cases that the Plaintiff can submit medical reports, exhibits, letters, and affidavits of his attending physician at a court hearing more than one (1) year after the A.L.J.'s determination of ineligibility. The Plaintiff has attached to this Brief an Affidavit by his physician, who has been treating him since January of 1975. This physician, Dr. Marvin Mishkin, informed the Social Security Administration that Plaintiff had suffered what appeared to be a stroke, and that Plaintiff should not exert himself (transcript p. 197). This physician subsequently informed the Social Security Administration that the Plaintiff was totally disabled (transcript p. 228). The attached Affidavit more clearly states Dr. Mishkin's diagnosis of Plaintiff's ailment at the time of his disability, and sets forth the reasons for his opinion. The Affidavit further chronicles the subsequent medical history of the Plaintiff, i. e.: that the Plaintiff has continually suffered from hypertension, from angina pectoris, was hospitalized in 1977 for gastrointestinal hemorrhaging, and was hospitalized in March of 1978 for cancer. In the Affidavit, Dr. Mishkin more clearly articulates the basis for his opinion that the Plaintiff is now, and has been since January, 1975, totally disabled. The Affidavit is not cumulative of the previous evidence, but is, in part, explanatory of the previous evidence. Therefore the Affidavit is probative evidence of the medical reports filed before the A.L.J., which reports the A.L.J. apparently rejected as "based upon subjective symptomatology" (transcript p. 13). It appears from the record that the

A.L.J. mistakenly assumed that if a man can move his arms and his legs, he could engage in meaningful employment. The Affidavit of Dr. Mishkin explodes that erroneous theory; it allows the previous evidence to be examined in a new and different light.

The Affidavit and exhibits are admissible under the rule established in the aforementioned cases. The Affidavit is probative of previous medical evidence, and offers new evidence relative to the Plaintiff's disability. As adjudged by the foregoing cases, the Affidavit establishes good cause for remanding the case to the A.L.J. for rehearing and the admission of new evidence.

■ The Plaintiff has cause for remand for the reason that he was not represented by counsel at the hearing before the A.L.J. The Plaintiff voluntarily appeared pro se. He realized the proceedings were informal, but he did not realize the profound legal aspects and implications of the proceedings. It would indeed be unusual for a man whose formal education ended with the ninth (9th) grade to be fully aware of the legal nature and consequences of the hearing before the A.L.J.

In *Little*, supra, the claimant appeared at the hearing unrepresented by counsel. The Court remanded the case for rehearing and presentation before the A.L.J. by the claimant, with the aid of experienced counsel. The Court said, at page 277:

"However, the meaning of 'substantial evidence' here is still a judicial question, and if there is such evidence supporting the claim, with little to the contrary other than conclusions, which may or may not 'stand up' when the claimant's case is presented by experienced counsel, (which he now has in this court, and who presumably will continue to represent him if the matter is remanded) it will appear to be the duty of the court to take such action as will avoid a miscarriage of justice."

While the *Little* Court held counsel was necessary to avoid a miscarriage of justice, the Court in *Goforth v. Cohen* (D.S.C.1968) 290 F.Supp. 590, made a more sweeping assessment of the right to counsel before the A.L.J., at pages 591–592, wherein the Court said:

"The lowest criminal is permitted to have counsel, given a full hearing, and permitted to introduce all available evidence. Surely a member of society's working force seeking to establish a physical disability should be given every opportunity to present medical evidence which would shed light on her physical condition during the critical period in which she met the earning requirements. Counsel is necessary to elicit this evidence and having retained counsel, remand is necessary in order to allow him to render his services."

"This court is engaged in a search for truth and justice and such a search cannot prosper in darkness."

The Plaintiff waived his right to counsel, but even in a criminal proceeding, such a waiver must be proven to have been made voluntarily and intelligently. It does not appear that the waiver was intelligently made in this case. The Plaintiff, being of limited education could not sufficiently perceive the complex legal nature of the proceedings. Had he been able to understand the legal aspects and consequences of the proceeding, he probably would have retained counsel. After he became fully aware of the implications of the proceedings, he did, in fact, retain counsel; however, by that time the decision had been rendered against him.

Under the doctrine espoused in *Little*, supra, and *Goforth*, supra, the fact that the Plaintiff, a man with little education, was not represented by counsel in his hearing before the A.L.J. is sufficient to warrant remanding the case to the A.L.J. for further proceedings.

The reasoning and result here announced on the counsel issue is well supported by *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Gold v. HEW*, 463 F.2d 38 (2d Cir. 1972); *Webb v. Finch*, 431 F.2d 1179 (6th Cir. 1970); *Alamo v. Richardson*, 355 F.Supp. 314 (D.C.Puerto

Rico 1972), and *Roman v. Secretary HEW*, 355 F.Supp. 646 (D.C.Puerto Rico 1972). The quality of representation may also be the basis for remand. *Arms v. Gardner*, 353 F.2d 197 (6th Cir. 1965), and *Kelley v. Weinberger*, 391 F.Supp. 1337 (N.D.Ind.1974). Recent legal literature analyzes the various elements of the concern for the unrepresented claimant. See Pokin, *The Effect of Representation in Nonadversary Proceedings—A Study of Three Disability Programs*, 62 Corn.L.Rev. 989 (1977).

### III.

The requirements of "substantial evidence" are much more stringent than appears at first blush. This standard requires the reviewing court to make a critical and searching review of all of the evidence as a whole, including the evidence which detracts from the decision of the A.L.J.; to weigh the evidence; to evaluate and resolve the conflicts in the evidence; and to decide from this if the evidence is sufficient evidence as would require a reasonable man to draw the same conclusion which the A.L.J. drew; everbearing in mind the Congressional intent and purposes of the Social Security Act.

■ What constitutes a disability can only be determined on a case-by-case analysis. As noted in *Sweeney*, supra, substantial pain can be, in and of itself, a disability.

"The general rule is that in order to authorize denial of Social Security benefits on the ground that the impairment does not render the claimant unable to engage in any gainful employment, 'there must be evidence to show the reasonable availability of jobs which the claimant can perform'. *Hayes v. Gardner*, 376 F.2d 217 (4th Cir. 1967). The burden of proving disability under the Act rests on the Plaintiff. (Citations omitted) This burden need not however, be carried to a point beyond a reasonable doubt. (Citations omitted)." *Black*, supra, page 865.

It was necessary that the Plaintiff show he was disabled,

"(B)ut, it was not necessary for him to show that he was wholly helpless in order

to have established his claim." *Forbes v. Finch,* 307 F.Supp. 1000 at 1004 (E.D. Tenn.1969).

■ The A.L.J. found:

"(3) Claimant's alleged impairments, high blood pressure, hardening of the arteries, arthritis of the spine, diabetes, and a cardiovascular accident, do not preclude claimant engaging in substantial gainful activity as contemplated by the Social Security Act, as amended, during the period of time in question hereunder.

(4) Claimant was not and is not disabled within the meaning and contemplation of the Social Security Act, as amended, at any time through the date of this decision." (transcript p. 14)

These findings were based upon a transcript of two hundred thirty (230) pages; the medical evidence of which the A.L.J. was able to evaluate in less than five (5) pages of his opinion. (transcript pp. 9–13) This is reminiscent of *Davis v. Weinberger* (M.D.Pa.1975) 230 F.Supp. 813, where the government filed a record consisting of ninety-nine (99) pages, which included twenty-four (24) pages of transcript of the claimant's testimony and the reports of one (1) hospital and seven (7) physicians. The A.L.J. made a three and one-half (3½) page decision with less than one (1) page related to the evaluation of the evidence. The Court remanded to the Secretary for further proceedings on the basis that the findings were not specific enough to support the conclusions, and that the decision was inadequate for meaningful review.

At page 11 of the transcript, the A.L.J. indicates that:

"Several of the exhibits in the medical evidence indicate opinions by doctors that claimant is either disabled or unable to work or unable to carry out normal activities (Exhibits 16, 17, 18, 19)."

Exhibit 16 is an exhibit comprised of thirty-eight (38) pages in the transcript (transcript pp. 154–191) and contains reports and opinions of at least six (6) different physicians whose signatures are discernible. Exhibits 17 and 18 are diagnosis by Dr. Mishkin, the

treating physician, which relate to the Plaintiff's disability and indicate that the Plaintiff should not exert himself. These exhibits should be read in connection with Dr. Mishkin's letter (transcript p. 228) which states that the Plaintiff is:

"Definitely disabled from all work."

This opinion is maintained in Dr. Mishkin's Affidavit attached to this Brief. Exhibit 19 is a report by Dr. Lamb who states his impressions that Plaintiff suffers from:

"1) Headache, vascular-tension, perhaps associated arteriosclerotic vascular disease changes.

2) Generalized cerebrovascular disease manifested for the most part by vertebral basilar insufficiency.

3) Agitated depression." (transcript p. 201)

The A.L.J. further states:

"The medical evidence also includes a statement to the effect that claimant is not disabled." (transcript p. 11)

This comment is a reference to Dr. Frank's report of July 11, 1975 (transcript pp. 211–215). Dr. Frank is the consultive physician to whom the Plaintiff was referred, and who examined the Plaintiff only once on one occasion. The key to the A.L.J.'s finding of ineligibility appears to be the last sentence of this report which reads:

"At the present time I am unable to make any specific diagnosis and for that reason I do not believe this man has any significant degree of impairment." (transcript p. 215)

The A.L.J. notes the inconsistency between the diagnosis and opinions of the one (1) consultive physician, and the numerous other physicians (transcript p. 13), but explains this away as mere passage of time. The A.L.J. dismisses all the opinions of the physicians who find the Plaintiff to be disabled as:

". . . based upon subjective symptomatology as opposed to objective medical evidence." (transcript p. 13)

This is very similar to *Ingram v. Richardson* (6th Cir., 1972) 471 F.2d 1268. In that case, the Court of Appeals reversed the District Court, which had affirmed the Secretary's denial of disability benefits, on the basis that the findings were not supported by substantial evidence. The Court said, at p. 1274:

"All of the medical opinions concerning the nature and extent of disability were treated by the appeals counsel as 'conclusions'."

"The magistrate fell into the same error. He treats the initial report of Dr. Ausmus as indicating 'a bare, unsupported diagnosis of "psychoneurosis",' and the report of Dr. Smith is treated in the same fashion."

The dismissal of the evidence by doctors who found the Plaintiff to be disabled as "subjective symptomatology" is the same as treating them as "bare unsupported diagnosis" or as "conclusions", and deserves the same treatment, i. e.: reversal.

The logic of adopting the one (1) opinion which finds the Plaintiff to be ineligible, in the face of overwhelming evidence that the Plaintiff is disabled, appears to be that, whereas Dr. Frank was the last physician to examine the Plaintiff, on July 11, 1975, his opinion must be the correct one.

There are certain difficulties with this "time heals all wounds" rationale. First, among these is the letter from Dr. Backs (transcript p. 208) to Dr. Frank, and dated the same day as Dr. Frank's opinion, which indicates the Plaintiff suffers from arteriosclerotic vascular disease.

Furthermore, there are the reports from Indiana University Hospital covering a period from April–July 30, 1975 (transcript pp. 205–206). This report consists of four (4) pages, however, the final two (2) pages which cover the period of time before and after Dr. Frank's letter were not included in the transcript by the Defendant. On April 2, 1975, Dr. Horner diagnosed the Plaintiff as probably suffering from cardio-vascular insufficiency, arteriosclerosis, angina, and chronic bronchitis.

On June 25, 1975, two (2) weeks prior to Dr. Frank's examination of the Plaintiff, the Plaintiff was examined for the third time by the Neuro-surgical Unit of the I.U.

Hospital. He was again diagnosed by a different physician, as having cardiovascular insufficiency and angina.

On Plaintiff's final visit to I.U. Hospital on July 30, 1975, the physician noted some improvement in Plaintiff's condition, but concluded that the I.U. Hospital cannot offer Plaintiff any better treatment than he was receiving from his private physician (Dr. Mishkin). The I.U. Hospital therefore indicated that Dr. Mishkin was correct in his diagnosis of the Plaintiff, correct in his treatment of the Plaintiff, and should continue such treatment.

The reports of the I.U. Hospital are consistent with the arteriograms performed by Dr. Grainger (transcript pp. 160–161), and Dr. Chamberlain (transcript pp. 163–164). These arteriograms evidence the:

"Extreme tortuousity of the thoracic aorta and the innominate and subclavian arteries."

These arteriograms indicate extensive hardening of the arteries, or arteriosclerotic disease. This disease increases both the problem of hypertension, and the probability of strokes and heart attacks.

When read in connection with Dr. Mishkin's Affidavit attached hereto, and in connection with Dr. Mishkin's letter of March 1, 1976, eight (8) months after Dr. Frank's one (1) examination of Plaintiff, (transcript p. 228) wherein Dr. Mishkin states, in typewritten words:

"He has osteoarthritis of the spine which is also significant. There is also a significant degree of arteriosclerosis (hardening of the arteries) present."

"Mr. Schlabach is definitely disabled from all work."

Dr. Mishkin then adds in his own handwriting, for emphasis:

"Any amount of work may increase the risk of further stroke!"

All of this evidence makes it clear that the Plaintiff is indeed, and has been since January, 1975, totally disabled.

"A physician's statement, of course, is not conclusive of the ultimate fact in issue, Mrs. Opal Oppenheim's ability to engage in substantial gainful activity. It does, however, reflect Dr. Lister's opinion of the severity of the claimant's various impairments and her ability to adapt to them. Dr. Lister has treated Mrs. Oppenheim since 1956. As we noted in *Vitek v. Finch*, 438 F.2d 1157, 1160 (4th Cir. 1971), '(W)hile the appeals counsel is not bound by this assessment, the court has emphasized that the opinion of a claimant's treating physician is entitled to great weight, for it reflects an expert judgment based on continuing observation of the patient's condition over a prolonged period of time.' Accord, *Underwood v. Ribicoff*, 298 F.2d 850 (4th Cir. 1962)." *Oppenheim*, supra, at p. 398.

"If the Court were to remand the only question to be reheard would be whether Plaintiff could perform substantial gainful employment in the national economy. Plaintiff's physician has found Plaintiff to be totally disabled. The opinion of the treating physician is entitled to great weight in determining whether Plaintiff is capable of performing substantial gainful activity." [Citations omitted] "This is particularly true in this case where the government medical expert examined Plaintiff only once some months prior to the treating physician's examination that resulted in the treating physician's finding of total disability." *Tyler*, supra, pages 790–791.

Dr. Mishkin is the treating physician. His opinion is entitled to great weight according to law. This is particularly true where Dr. Mishkin found the Plaintiff to be totally disabled both prior to the one (1) examination Plaintiff had with the consultive physician, and Dr. Mishkin again found the Plaintiff to be totally disabled several months subsequent to said examination by the consultive physician. However, the A.L.J. did not accord Dr. Mishkin's opinion great weight. The A.L.J. dismissed Dr. Mishkin's opinion as being mere "subjective symptomatology". The conclusions of the A.L.J. are, therefore, contrary to law.

A reasonable man considering the opinion of one (1) physician, a consultive physician,

who examined the Plaintiff on only one (1) occasion, as opposed to the opinions of the numerous physicians, including the Plaintiff's treating physician, would conclude that the opinion of the treating physician would be more accurate, and more credible. A reasonable man would, on the basis of the evidence before the A.L.J., find that the Plaintiff was disabled. The A.L.J. did not so find. Clearly, there is no substantial evidence to support the ALJ's conclusion. Having no basis in substantial evidence, the A.L.J.'s opinion must be set aside.

■ Perhaps the A.L.J. incorrectly believes that because a man can sit, stand, and ambulate, he can therefore work. As Dr. Mishkin's Affidavit clearly indicates, it is not just the physical stress of work which will harm the Plaintiff, but, more especially, the pressures and tensions which increase an already dangerously high blood pressure, thereby subjecting the Plaintiff to an abnormally high risk of strokes and heart attacks.

As viewed from the foregoing discussion, there is no substantial evidence to support the A.L.J.'s opinion; there is therefore, no genuine issue of a material fact.

## IV.

The vocational expert indicated (transcript pp. 77–78), and the A.L.J. concluded (transcript p. 13), that there are approximately six thousand (6,000) to eight thousand (8,000) jobs in northern Indiana that the Plaintiff could perform. On p. 7 of the transcript, the A.L.J. quotes Regulation 4, Section 404.1524(c) which states, in part:

"evidence shall also describe the individual's capacity to perform significant functions such as the capacity to sit, stand, or move about, travel, handle objects, hear or speak, . . ."

This section has great underlying significance for the A.L.J.'s decision. The underlying foundation of the A.L.J.'s decision appears to be the assumption that only strenuous physican labor would be harmful to the Plaintiff, and since he is able to sit, stand, and ambulate, he can therefore perform some sort of gainful activity. This assump-

tion is, of course, contrary to the expert medical opinions set forth above.

■ When considering the availability of gainful activity, it must be remembered that the Plaintiff need only show that he cannot engage in his customarily work; that after he has shown this, the Defendant has the burden of proving that the Plaintiff can engage in some other gainful activity, as the A.L.J. attempted to do in his opinion. As the District Court said in *Green v. Secretary of H. E. W.*, (W.D.La.1975) 404 F.Supp. 172, 174:

"This review of the medical evidence leaves no doubt that the Plaintiff has established his inability to engage in his customary work; indeed, counsel for Defendant has recognized such in his brief. As noted above, once Plaintiff has made this showing, the burden of proof shifts to the Secretary to produce evidence that jobs do exist in the economy which Plaintiff can perform, given his medical condition and education." [Citations omitted].

The burden being upon the Defendant, the Defendant has the duty to come forward with substantial evidence that the Plaintiff can engage in gainful activity.

"The hearing examiner based his finding that Plaintiff is not disabled on the recital of a vocational witness that the jobs of night watchman, bottle inspector, warehouse clerk, machine oiler, bench hand, lot chaser, industrial truck operator (fork lift), salesman, laundry checker, hospital attendant, and tool clerk exists within the 35–40 mile area of Plaintiff's residence and that they could be performed by Plaintiff."

"The record before the Court lacks substantial evidence that the Plaintiff has a 'reasonable opportunity' to engage in any of the gainful activities listed by the vocational witness." *Jones v. Cohen* (W.D. Pa.1969) 295 F.Supp. 1302.

■ It must be kept in mind that the only relevant experience is that of the individual Plaintiff. As the District Court said in *Forbes v. Finch*, supra, at p. 1004:

"And what the average person might be capable of doing is not germane; the specialized issue is what this particular claimant is capable or incapable of doing, and the effect of the combination of impairments upon this particular claimant." (Citation omitted).

The District Court for the Western District of New York stated this concept more forcefully in *Terio, supra,* p. 214, where it said:

"The words 'any substantial gainful activity' must be read in light of what is reasonably possible, and not what is conceivable. Mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." [Citations omitted]

"The Court of Appeals for the 4th Circuit has cautioned both the Secretary and the courts that where:

. . . the possibilities of obtaining employment are practically nill, it is no answer that the claimant may be theoretically capable of performing (some jobs) . . . Employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs.

It is said that the question is whether '(i)t is unrealistic to think that they would hire anyone with the impairments of this claimant.' *Thomas v. Celebrezze,* 331 F.2d 541, 546 (4th Cir. 1964)."

Perhaps most relevant to the case at bar is *Oppenheim, supra,* where the Court of Appeals said, at p. 398:

"It is not sufficient for the Secretary to say, as here, that the claimant suffers several physical impairments but can do 'light and sedentary work within the scope of her vocational training and experience as an office manager, bookkeeper or office clerk.' It must be shown medically that she can perform the physical activity those jobs require without serious aggravation to present physical impairment or to general health." (Emphasis added).

The fatal flaw in the A.L.J.'s opinion is that he assumes Plaintiff has the medical ability to do some type of work. Perhaps this arises from a misunderstanding of the medical evidence. The vocational expert testified that Plaintiff could perform sedentary jobs, contrary to expert medical opinion. Therefore, the opinion of the vocational expert is irrelevant. The vocational expert further testified that there were approximately six thousand (6,000) to eight thousand (8,000) such jobs available to Plaintiff in northern Indiana.

The first question which is raised by the vocational expert's testimony is where these jobs are located (other than northern Indiana)? Are these jobs merely jobs on paper, or do they actually exist? If they do, in fact, exist, the vocational expert should be able to supply the A.L.J. and Plaintiff with job descriptions and employer's addresses.

The second question raised by the vocational expert's testimony is whether these jobs reflect the number of people employed in these jobs, in this area, or whether they represent the number of open jobs available to Plaintiff, in this area? If these jobs are already filled by other employees, they are obviously not available to the Plaintiff.

As aforesaid, the vocational expert testified that the Plaintiff could perform light, sedentary jobs, such as light mechanical or appliance repairwork. The Plaintiff testified (transcript p. 79) that he has, on several occasions, tried to perform such light mechanical and appliance repairwork, but that he is unable to perform these activities for physical reasons unrelated to his disability. Admittedly, the Plaintiff does not have the academic background or professional expertise of the vocational expert; the Plaintiff has only his own personal experience of what he can and cannot do. Plaintiff testifies that he has tried and cannot do that work which the vocational expert testifies the Plaintiff can do.

The vocational expert's testimony is, at best, theoretical speculation that there are six thousand (6,000) to eight thousand

(8,000) jobs in existence that Plaintiff could perform. The vocational expert's theoretical testimony about what work Plaintiff can perform is directly contradicted by the Plaintiff's own personal experience. This is not substantial evidence of ability to engage in gainful employment.

Even assuming that the testimony of the vocational expert is substantial evidence of what the average person could do, it is not evidence of what this particular Plaintiff can do. Furthermore, it is contrary to the great weight of medical evidence (see VI, supra). The A.L.J. has assumed that Plaintiff could do some type of work because of his ability to move about. The A.L.J. has misconstrued the true import of the medical evidence. This assumption was erroneous, and without this underlying assumption the whole theory that Plaintiff can engage in some type of gainful employment collapses.

The high probability that Plaintiff would suffer a stroke or heart attack if he were to engage in "substantial gainful activity" is a serious aggravation to his general health, and contrary to the doctrine established by the Court of Appeals in *Oppenheim*, supra.

There is no substantial evidence that this individual Plaintiff can perform gainful activity without seriously endangering his health. There is only the theory that the average person with Plaintiff's disability should be able to engage in some type of gainful activity. This is coupled with the speculation that there may be large numbers of jobs in the area. Whereas, there is no substantial evidence to support the finding that Plaintiff can engage in substantial gainful activity, there is no genuine issue of any material fact. Therefore, summary judgment should be granted for Plaintiff.

### V.

■ The Plaintiff is disabled. The medical evidence of the treating physician, corroborated by all but one (1) other physician, indicates that Plaintiff cannot work. The reason for Plaintiff's inability to work (apparently misunderstood by the A.L.J.) is because of the pressure and tension which employment creates raises Plaintiff's already dangerously high blood pressure, and thereby greatly increases Plaintiff's abnormally high proclivity to strokes and heart attacks. The A.L.J. either failed to perceive this aspect of the medical evidence, ignored this aspect of the medical evidence, or passed it off as "subjective symptomatology". The A.L.J. adopted the opinion of Dr. Frank, which found that there was nothing wrong with Plaintiff, contrary to all other medical opinion, and which proves, at best, that on that one (1) particular day, that one (1) particular physician was unable to diagnose Plaintiff's impairments. Plaintiff's impairments: acute hypertension, arteriosclerosis, prior cerebral vascular accidents, arthritis of the spine, and diabetes are impairments within the meaning of Section 223(d)(3) of the Social Security Act as quoted by the A.L.J. on p. 7 of the transcript. Furthermore, these impairments have lasted more than twelve (12) months to bring them within the parameters of Section 223(d)(1) of the Social Security Act defining disability; also quoted on p. 7 of the transcript.

In the face of such overwhelming medical evidence, there can be no substantial evidence to support the A.L.J.'s decision. Therefore, there is no genuine issue of a material fact, and summary judgment should be entered for the Plaintiff.

The actions of the A.L.J. are not based upon substantial evidence and therefore the actions of the Appeals Counsel in affirming the decision of the A.L.J. cannot be based upon substantial evidence.

The A.L.J. apparently misunderstood the importance of Dr. Mishkin's medical reports. These reports are clarified by Dr. Mishkin's Affidavit. Secondly, the Plaintiff has cause for remand because Plaintiff did not intelligently waive the right to counsel at the Administrative Hearing.

The Court has the power to remand the matter to the A.L.J. for further proceedings, or to enter judgment for the Plaintiff. As heretofore quoted:

"If it is apparent that the administrative decision is based upon conclusions which

are not reasonably reached, or which resulted from improper conclusions of law which are unsupported by the evidence, the Court may and should correct these errors. *Ellerman v. Flemming* (W.D.Mo.) 188 F.Supp. 521, l. c. 525, and the cases cited thereat." *Domann v. Secretary of Health, Education and Welfare*, 220 F.Supp. 252, 258 (W.D.Mo.1963).

The case should be remanded for further proceedings.

This case is now reversed and remanded with directions to conduct a new hearing and enter fresh findings on the issue of disability and the actual availability of jobs in the national economy for which this Plaintiff is physically and emotionally qualified. At such new administrative hearing both the Plaintiff and Defendant shall be entitled to present new and additional evidence on the subjects above referred to.