**Ora K. LACHEY, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

**No. C–3–79–239.**

United States District Court, S. D. Ohio, W. D.

Feb. 11, 1981.

Joseph E. Kane, Asst. U. S. Atty., Columbus, Ohio, for defendant.

DECISION AND ENTRY REJECTING REPORT AND RECOMMENDATION OF MAGISTRATE; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OVERRULED; PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT SUSTAINED; JUDGMENT TO PLAINTIFF AND AGAINST DEFENDANT; ENTRY OF JUDGMENT; TERMINATION ENTRY

RICE, District Judge.

## I. INTRODUCTION

This matter is before the Court pursuant to Defendant's motion, under 28 U.S.C. § 636(c) and Fed.R.Civ.P. 53(e)(2), seeking review of the Report and Recommendation of the United States Magistrate, which recommended that the Plaintiff's Motion for Summary Judgment be granted and the Defendant's denied, thus finding the Plaintiff to be disabled and entitled to Social Security benefits. Specifically, Defendant has requested that the Court conduct a *de novo* determination of this matter and reject the Magistrate's recommendation as an erroneous application of administrative regulations. Because Defendant has requested a *de novo* review under 28 U.S.C. § 636(c), the Court will, in addition to the above contention of the Defendant, discuss the matters presented in the cross motions of the parties for summary judgment. However, for purposes of clarity, the Court will initially relate the procedural history of the case, and then separately address the sufficiency of the Magistrate's Report. An analysis of the pending motions for summary judgment will then follow.

## II. PROCEDURAL HISTORY

On September 12, 1977, Plaintiff filed her application for disability insurance benefits, claiming that she was disabled due to arthritis, muscle spasms, and a blood clot (T. 79–82). On May 10, 1978, her claim was

John A. Cervay, E. S. Gallon & Associates, Dayton, Ohio, for plaintiff.

disapproved (T. 83), and upon reconsideration, that finding was affirmed (T. 86). Plaintiff timely filed her request for hearing, and on January 16, 1979, a *de novo* hearing was held before an administrative law judge, before whom Plaintiff and her attorney appeared in person (T. 22). In addition, a vocational expert, Dr. George Parsons, appeared and testified at the hearing (T. 46–57).

On March 14, 1979, the Administrative Law Judge (hereinafter referred to as ALJ) rendered a decision denying benefits, based on a specific finding that Plaintiff did not have an impairment of sufficient severity to be considered disabled under the Social Security Act (T. 16–17). Plaintiff requested a review of this decision by the Appeals Council (T. 6), which request was denied on May 23, 1979 (T. 3). Accordingly, Plaintiff filed her Complaint with this Court, seeking judicial review of the Secretary's decision. The Defendant answered the Complaint on August 16, 1979. Both parties then filed motions for summary judgment, and on August 13, 1980, the Magistrate issued his recommendation that Plaintiff's motion for summary judgment be granted. As indicated above, Defendant has objected to the Magistrate's recommendation, requesting that the Court reject the report and grant summary judgment for the Defendant.

### III. SUFFICIENCY OF THE MAGISTRATE'S REPORT

In his Report, the Magistrate concluded that the ALJ had made a determination of prima facie disability, based on Plaintiff's inability to return to her former employment (Pg. 5). The Magistrate then indicated that the Secretary had not met her burden of proving that Plaintiff could perform other substantial gainful activity (Pg. 6, 7). Finally, the Magistrate found that Plaintiff should be considered disabled because she fulfilled the requirements contained in 20 C.F.R. Subpart P., App. 2, Rules 201.09 and 201.10 (Pg. 7).

---

\* Recourse to the opinion of the vocational expert is not to be had without an initial finding of

An examination of the opinion of the ALJ, however, indicates that the Magistrate erred in his analysis of the findings contained therein. In the portion of the opinion entitled "Evaluation of the Evidence", the ALJ commented that:

> Inasmuch as the Claimant retains the functional capacity to perform her usual occupation as well as the jobs enumerated by the vocational expert, the administrative law judge concludes, and so finds, that she was not under a "disability" as that term is defined in the Social Security Act, at any time on or prior to the date of this decision" (T. 16).

Further, the ALJ in his specific findings, again emphasized that Plaintiff did not have a severe impairment and was not disabled within the meaning of the Act (T. 17). Although the ALJ did erroneously refer to the vocational testimony,\* his findings cannot be read as indicating either that Plaintiff was unable to return to her former employment or that she had established a *prima facie* case of disability. For these reasons, the analysis of the Magistrate is erroneous (in his conclusion that the ALJ had determined that the Plaintiff had established a *prima facie* case of disability) and the Court declines to accept his Report and Recommendation.

### IV. MOTIONS FOR SUMMARY JUDGMENT

Because the Recommendation of the Magistrate has been rejected, the Court will address the contentions presented in the pending motions for summary judgment, on a *de novo* basis. Although Plaintiff in her latest memorandum has concentrated upon the ALJ's alleged improper application of 20 C.F.R., Subpart P., App. 2, Rule 202.10, the pertinent issue before the Court is whether substantial evidence exists in the record to support the ALJ's determination that Plaintiff did not have an impairment of sufficient severity to require a finding that she was disabled.

---

claimant disability. 20 C.F.R. 404.1503 (1979).

In reviewing the decision of the Secretary, the Court is mindful of the limited scope of review permitted by 42 U.S.C. § 405(g), which provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Courts, in interpreting the meaning of this standard, have uniformly followed the statement of the Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), that substantial evidence is:

[m]ore than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. (citing *Consolidated Edison Co. v. N. L. R. B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). *Id.* 402 U.S. at 401, 91 S.Ct. at 1427.

An application of this standard to the present case indicates that there is little relevant evidence in the record to support the conclusion of the ALJ. Rather, the record provides overwhelming support for conclusion that Plaintiff did establish a *prima facie* case of disability.

■ The administrative transcript indicates that Plaintiff was hospitalized for back pain on three occasions: from July 31, 1977 to August 4, 1977 (T. 110); from September 26, 1977 to September 30, 1977 (T. 133); and from February 14, 1978 to February 24, 1978 (T. 122). This recurrent hospitalization in itself is an indication of a medical problem of some consequence. During Plaintiff's first hospitalization, spine films indicated generalized osteoarthritis of the dorsal spine (T. 111), and other x-rays evidenced lipping and spurring involving all of the lumbar vertabrae (T. 115). At that time, Plaintiff's treating physician made a diagnosis of degenerative joint disease of the lumbosacral spine (T. 109).

As indicated, Plaintiff was again hospitalized on September 26, 1977 (T. 133). The admitting report of Dr. Maimon indicated that Plaintiff had been treated as an outpatient but that on this occasion, "the pain was of such magnitude that it was felt prudent to admit her" (T. 131). The doctor further described Plaintiff as "an obese white woman in acute distress" (T. 131). X-rays taken on this admission indicated considerable spurring between most of the opposing surfaces on the lumbosacral spine (T. 136).

Dr. Maimon's report of November 25, 1977, to the Bureau of Disability Determination, indicated that Plaintiff had a seventy-five percent limitation of motion in the lumbosacral area, quite severe muscle spasm, and a poor to fair response to physical therapy (T. 117).

On February 14, 1978, Plaintiff was again admitted to St. Elizabeth Medical Center, remaining for ten days (T. 122). At that time, Dr. Paley was called in as an orthopedic consultant, and diagnosed Plaintiff as having degenerative arthritis of the lumbosacral spine (T. 122). During this stay, Plaintiff rapidly began to improve following pelvic traction (T. 122). X-rays taken on February 14, 1978, were compared with those taken on September 28, 1977. Based on this comparison, a finding was made of "hypertrophic changes especially noted at L–1, 2 and 3" (T. 127).

A letter written by Dr. Maimon on January 9, 1977 indicated that he had treated Plaintiff from 1974 to 1977, that her response to therapy was poor, and her prognosis was guarded (T. 147–148). This analysis was specifically premised upon x-rays done over a period of time at St. Elizabeth's Medical Center (T. 147). In addition, a physical capacities evaluation completed on November 30, 1978 by Dr. Dinkin, Plaintiff's treating physician, indicated that Plaintiff could sit for fifteen minutes, stand for one hour, and walk for one half-hour (T. 141). Dr. Dinkin further stated that Plaintiff could never lift *over* ten pounds, that she could lift *up to* ten pounds occasionally, and that she could never carry over ten pounds (T. 141). The doctor also indicated that Plaintiff was totally restricted in regard to driving automotive equipment (T. 141).

All of the above medical evidence strongly suggests that Plaintiff did establish a *prima facie* case of disability. Further sup-

portive of this fact is Plaintiff's testimony that, prior to her recent move to a one-story home, she was only able, with the assistance of her husband, to negotiate the stairs once per day (T. 66), that she is unable to sit for more than fifteen minutes to an hour (T. 43), that she does no vacuuming (T. 57), and that she must lay down three or four times a day for at least one half-hour (T. 46). In addition, Plaintiff testified that she was in constant pain (T. 42), and that she could not squat, due to the fact that she could not get back up without help (T. 45).

The Court has several times carefully reviewed the decision of the ALJ, but has failed, despite this close scrutiny, to divine any rational basis for his determination that Plaintiff did not have a severe impairment. One ostensible reason given in the opinion is a conclusory statement by the ALJ that Plaintiff's abilities have "not been impaired to such an extent so as to prevent her from returning to her most recent occupation" (T. 15). However, no specific evidence was cited to support this conclusion. The only other reason for the ALJ's decision appears to be his disregard of the physical capacities evaluation submitted by Dr. Dinkin. The ALJ characterized that evaluation as containing limitations more severe than those testified to by Plaintiff, and as being inconsistent with the other evidence of record. However, as previously indicated, Dr. Dinkin's evaluation is supported by the x-ray findings, by Dr. Maimon's report of November, 1977, and letter of January 9, 1979, by the medical evidence of record, and by Plaintiff's testimony. Furthermore, Dr. Dinkin treated Plaintiff from 1972 to 1978 and was in the best position to evaluate her physical condition (T. 14).

■ Although the ALJ seemed, in his questioning of the vocational expert, to place reliance upon Dr. Paley's report to the Bureau of Disability Determination (T. 73–74), he does not indicate a finding of conflicting medical opinion. Moreover, although Dr. Paley's findings are not as severe as those of Dr. Dinkin and Dr. Maimon (T. 118), he was involved with Plaintiff's case primarily on a consulting basis (T. 122).

In addition, his basic diagnosis confirms that of the other doctors (T. 122).

The law in this Circuit is settled that: [W]hile an expert medical opinion as to disability to engage in substantial employment is admissible for consideration by the Hearing Examiner, and not, in itself, binding upon him, nevertheless, if such opinion is not controverted by substantial evidence to the contrary, the Hearing Examiner's decision adverse to such expert medical opinion must be set aside. *Colwell v. Gardner*, 386 F.2d 56, 72 (6th Cir. 1967).

Further, the law is clear that although the Secretary has expertise in the area of Social Security claims, he does not supplant the medical expert. *Hall v. Celebreeze*, 314 F.2d 686 (6th Cir. 1963). Accordingly, because the medical opinion of Dr. Dinkin is not controverted by substantial evidence, but is rather supported by the rest of the record, the ALJ's decision must be set aside, since the Court concludes that said decision is *not* supported by substantial evidence in the record.

## V. PROCEDURE AFTER REVERSAL OF THE DECISION OF THE ALJ

42 U.S.C. § 405(g) provides that the Court has the power to reverse the Secretary "with or without remanding the cause for hearing". The Courts have taken various factors into account in determining whether a case should be remanded to the Secretary after reversal. In *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975), the Court indicated that remand is proper where there is merely an "inadvertent procedural or technical flaw in the administrative process that reasonably ought to be subject to correction." *Id.* at 668. Further, in *Sayers v. Gardner*, 380 F.2d 940 (6th Cir. 1967), the Court stated that remand would serve no purpose where "the proof of appellant's disability was strong, and the evidence to the contrary was lacking in substance". *Id.* at 955. *In Accord: Breedon v. Weinberger*, 493 F.2d 1002 (4th Cir. 1973) (Court refused to remand where reopening the record for further evidence would serve no purpose).

■ The issue here, then, is whether a remand to the administrative level would fulfill a legitimate purpose. As in *Sayers, supra,* the evidence of Plaintiff's disability has already been found by the Court to be substantial. The principle is settled that once a *prima facie* case of disability has been demonstrated, the burden shifts to the Secretary, who must then establish that employment exists which is compatible with the claimant's disability. *Gray v. Finch,* 427 F.2d 336 (6th Cir. 1970). Vocational testimony is generally the preferred method of meeting this burden. *O'Banner v. Secretary of Health, Education and Welfare,* 587 F.2d 321 (6th Cir. 1978). As Plaintiff has established a *prima facie* case of disability, the only purpose to be served by remand would be to allow the government an opportunity to present vocational testimony. This goal would not be accomplished by a remand, however, as a vocational expert did testify at the administrative hearing.

■ The vocational evidence offered at the hearing clearly did not establish the existence of jobs which Plaintiff could perform in light of her residual functional capacity. The vocational expert first indicated that if Plaintiff's testimony were accepted as true, she would not be able to perform her last work, or other work (T. 71). When queried by the ALJ as to his basis for such a conclusion, the vocational expert indicated that the statement was due to her limitations of sitting, standing and walking, as well as general pain (T. 71).

After being advised by the ALJ to consider all of the medical evidence, Dr. Parsons then concluded that Plaintiff could engage in sedentary work (T. 74). However, this remark is clearly not correct in light of Dr. Dinkin's indication that Plaintiff could sit for only fifteen minutes and stand for one hour (T. 141). Where the testimony of a vocational expert conflicts with expert medical opinion, his analysis has been held to be irrelevant. *Schlabach v. Secretary of Health, Education and Welfare,* 469 F.Supp. 304 (N.D.Ind.1978). In addition, the determination of Dr. Parsons, on medical evidence, that Plaintiff could engage in sedentary work is inconsistent with his opinion based on Plaintiff's testimony. As previously noted, Plaintiff's testimony and Dr. Dinkin's evaluation referred to essentially identical limitations. Consequently, a remand for additional vocational testimony would be a fruitless and futile exercise.

Moreover, even assuming that Dr. Parsons correctly evaluated Plaintiff's residual functional capacity, i. e., as an ability to perform sedentary work, a finding of disability would be dictated by the Secretary's own regulations. In this context, the Court initially notes that the ALJ erred in his use of the tables contained in 20 C.F.R. Subpart P., App. 2, in light of his determination that Plaintiff had no severe medically determinable impairment. *See:* 20 C.F.R. Subpart P., App. 2, Table 1. Further, the conclusion that Plaintiff could engage in light work is highly questionable in view of the testimony of the Secretary's witness, who indicated only sedentary work capacity.

20 C.F.R. Subpart P., App. 2 provides a set of vocational guidelines to be used where the particular qualifications of an individual fall within the criteria of those rules. According to Section 200.00 of Subpart P., App. 2:

> where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with a particular rule, the rule directs a conclusion as to whether or not that individual is disabled.

Further, Section 200.00(c) provides that:

> In the application of the rules, the individual's residual functional capacity . . ., age, education, and work experience must first be determined.

As indicated, the assumption is made for purposes of this opinion that Plaintiff does have the capacity for sedentary work. As Plaintiff is age 54 (T. 27), she is considered under 20 C.F.R. Section 404.1506, to be approaching advanced age. Further, as Plaintiff completed schooling only partly through the fourth grade (T. 27), 20 C.F.R. Section 404.1507 indicates her education is marginal.

Finally, in regard to Plaintiff's work experience, her testimony indicated that her most recent employment, from 1973 to 1977, was for Holland Labs in a delivery capacity (T. 35, 36). Plaintiff's other work history involved a variety of unskilled jobs (T. 28, 31, 32). Plaintiff's past employment was considered unskilled by the ALJ and by the vocational expert (T. 16, 75, 76). Certainly, functions such as driving, mixing, and cleaning, must be viewed as requiring little judgment or as "simple duties that can be learned on the jobs in a short period of time". 20 C.F.R. Section 404.1511(b).

After the age, education, work experience and residual functional capacity of a claimant have been ascertained, Section 200.00(d) provides that the individual's specific vocational profile shall be located. Vocational profiles are listed in Tables 1, 2, and 3 of 20 C.F.R. Subpart P., App. 2. Plaintiff's profile is reflected in Rule 201.09 of Table 1, which rule directs a finding of disabled. Even had Plaintiff's work been considered semi-skilled, Rule 201.10 also would mandate a finding of disabled.

The above analysis indicates that the testimony of the vocational expert, even considered in the context of the Plaintiff's assumed (for purposes of argument) ability to perform sedentary work, does not alter the conclusion of disability required by the facts of the present case. Accordingly, as no legitimate purpose could be fulfilled by a remand, the Court declines to remand the case for further consideration at the administrative level.

### VI. CONCLUSION

Based on the foregoing analysis, the Court finds that:

1. The Report and Recommended Decision of the Magistrate is in error and is therefore rejected;

2. The decisions of the Administrative Law Judge and the Secretary were not supported by substantial evidence in the record and they are hereby reversed;

3. The Defendant's Motion for Summary Judgment is not well taken and is consequently denied;

4. The Plaintiff's Motion for Summary Judgment is found to be well taken and accordingly is granted. The Plaintiff is thus deemed entitled to disability benefits. Judgment is entered in favor of the Plaintiff and against the Defendant herein.

Costs are to be paid by the Defendant.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.